13 So.2d 54

## BROWNING v. STATE.
### 1 Div. 413.

Court of Appeals of Alabama.
March 16, 1943.

Rehearing Denied April 13, 1943.

Bart B. Chamberlain, Jr., of Mobile, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Walter W. Flowers, Asst. Atty. Gen., for the State.

PER CURIAM.

This appellant was indicted for the specific offense of "reckless driving," and none other. The evidence is clear that the reckless driving, if done, was after the State's witnesses attempted an unlawful arrest upon him.

As to this offense charged in the indictment and to which the trial of this case should have been confined, there is no controversy or dispute about the fact the defendant had committed no crime or offense at the time of his attempted arrest by the several officers. Nor is there any dispute or conflict as to the unlawful and unparalleled conduct and actions of said officers in the attempted arrest. Said officers themselves testified they knew the defendant lived on said road out of Mobile and would return to his home. They formulated an ambush, and laid in wait for his approach. Further down the road they barricaded the highway by placing two police cars across it in order to entrap him, and as he approached in his car driving, as stated by the officers in a lawful manner, about 30 miles an hour the ambushers sounded their siren on the police car and took out after him with siren blasting. As to this the principal witness for the State, one Frank Schottgen, testified, in substance, that he and one other officer laid in wait for a time. They had been lying in wait for him about fifteen minutes when he drove by; that he (appellant) at that time was driving about 30 miles an hour. "None of us officers had seen him violate any law before the blockade. * * * We had no warrant for his arrest. * * * I turned on the siren before I started out after him, that was our pre-arranged signal for the boys a little further down. He was maintaining the speed of thirty to thirty-five miles an hour until he got to the place where the blockade was, I heard the shot, but I did not see the shot fired." Officer Gibney testified: "I participated in this arrest and chase down Cedar Point Road. I was just South of the blockade. I was not in the bushes there, I was standing alongside of the road; I was standing there to hold traffic back when he came down there and we figured on stopping him. I think there were two cars there at the time. We shot at him

140

just south of the blockade. I was standing out there in the road when I shot at him. I was standing where he could see me. I motioned for him to stop but he did not stop. The siren on the Lieutenant's car was blowing, too."

Witness Gibney also testified: "I had just come on the Police Department at that time. I didn't consider myself an an expert at nothing. The gun was not a thirty-eight calibre; it was not a thirty-two; it was a forty-four. I had practiced shooting a forty-four a good while before that time."

There was no material conflict in the evidence in this case. All the testimony adduced upon the trial shows conclusively that the defendant was driving his car in a lawful manner in every way and continued to so drive it until and when he ran into the ambush and barricade, above described, whereupon then and then only he accelerated his speed in order (so he claims) to escape from the blowing sirens and the unlawful shots being fired at him from the, to say charitably, over-zealous officers in pursuit of him.

■ The defendant interposes in justification of his driving at an excessive rate of speed after he was fired upon as aforesaid that he was fleeing an unlawful attack made and being made upon him and that he had a right to do so to save himself from serious injury. Viz, that the act complained of in the indictment was without free will upon his part but was the result of compulsion and duress because of the State's witnesses who sought to ambush him and unlawfully fire upon him. The authorities seem to approve such a defense if satisfactorily proven.

■ In Arp v. State, 97 Ala. 5, 12 So. 301, 302, 19 L.R.A. 357, 38 Am.St.Rep. 137, it was held: (1) *"The person committing the crime must be a free agent, and not subject to actual force at the time the act is done;* Thus if A by force take the arm of B, in which is a weapon, and therewith kill C, A is guilty of murder, but not B." (2) Further from the Arp case, is the proposition: *"No matter what may be the shape compulsion takes, if it affects the person, and be yielded to bona fide, it is a legitimate defense."* (3) *"That always an act done from compulsion or necessity is not a crime. To this proposition the law knows no exception. Whatever it is necessary for a man to do to save his life is, in general to be considered as compelled."* (Italics supplied).

Upon the question of self-preservation, even a dumb animal is thus imbued. A pertinent quotation is found in Bartlett's Familiar Quotations, p. 764, as follows: "They say that the first inclination which an animal has *is to protect itself."*

In 13 R.C.L. § 8, p. 708, it is said: "It has been declared by statute that 'a person forced by threats or actual violence to do an act is not liable to punishment for same.'"

In 15 American Jurisprudence, § 318, p. 16: "It seems that the law will excuse a person when acting under coercion or compulsion, for committing most, if not all, crimes, except taking the life of an innocent person. * * * The fear which the law recognizes as an excuse for the perpetration of an offense must proceed [as was claimed here] from an immediate and actual danger, threatening the very life of the perpetrator." (Brackets supplied).

■ C.J. Vol. 16, § 59, p. 91: "An act which would otherwise constitute a crime may also be excused on the ground that it was done [as defendant contends here] under compulsion or duress. The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done." See also 22 C.J.S., Criminal Law, § 44. (Brackets supplied).

In the case of Owens v. State, 215 Ala. 42, 109 So. 109, 110, the following charge was requested: "(45) If the jury is satisfied from the evidence that what the defendant did in the alleged robbery he did from compulsion and fear that, unless he did what he did, he would be shot or killed, the jury must acquit the defendant." There was no criticism of said charge as a legal proposition. Its refusal by the trial court to give the charge was upheld and approved by the Supreme Court, as being abstract in that case, no evidence upon which it could be based. Likewise, in the case of Thomas v. State, 134 Ala. 126, 129, 33 So. 130, 132, a similar charge was held properly refused as being abstract. In said case, however, the dissenting opinion by Mr. Justice Tyson, agreed to by Mr. Justice Sharpe, held that even under the evidence in that case the charge should have been given, they stating: "It is entirely clear to my mind that the evidence afforded an inference for the consideration

of the jury that defendant's participation in the robbery was under duress."

 "The practice of inducing or instigating the commission of a crime by an otherwise innocent person has been denounced as reprehensible and contrary to sound public policy." 22 C.J.S., Criminal Law, § 45, p. 100.

Other eminent authorities have been examined. All are in accord with what has been here said, hence further discussion of the principle need not be indulged.

Some of the charges refused to the defendant—notably the ones we have numbered B and D—properly state the law and should have been given. Their refusal, we think, was error to reversal.

The trial court, over due objections and exceptions, permitted the State to show that the defendant had in his car, when finally arrested, some lottery slips. The only possible basis for allowance of this proof was for the jury to say whether the defendant was actually fleeing the unlawful arrest to save his life (or himself from serious harm) or because he did not want the officers to find him in possession of the slips. Such proof should have been limited to this purpose, for the rule is long standing that in a prosecution for a particular offense evidence tending to show defendant guilty of another and distinct offense or concerned in other and different transactions disconnected with the crime charged, is inadmissible; the manifest purpose of this rule being to prevent prejudice to the defendant in the minds of the jury by the introduction of evidence of offenses and acts for which he is not indicted and which are irrelevant to the matter in issue and thereby building up a conviction on inferences of guilt from the fact that he had committed another offense. The justice, fairness, and reason for the rule is apparent, and, as said in the case of Gassenheimer v. State, 52 Ala. 313: "A strict adherence to it is necessary to prevent criminal prosecutions from becoming instruments of oppression and injustice."

This rule which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused is always applied with considerable strictness in criminal proceedings. The wisdom and justice of this, at least from the defendant's standpoint, are self-evident. The defendant can with fairness be expected to come into court prepared to meet the accusations contained in the indictment only, which in this case was the offense of reckless driving and all the evidence offered by the State, upon the trial of said charge or accusation, should consist wholly of facts which were within the range and scope of the allegations contained in the indictment upon which he was being tried.

It is also our view that the trial court unduly restricted the defendant's cross-examination of the officers who testified about their unusual performances. We fail to perceive the basis upon which defendant could not fully inquire of these officers exactly why they were seeking the arrest of the defendant and exactly "what law did they see him break?" or "was he breaking?"

It is a close question as to whether or not defendant was entitled to the general affirmative charge, but we have concluded that it was for the jury to determine whether his flight (and excessive speed or reckless driving) was under duress and fear of death or grave physical harm from the barricadeers who shot at him or whether it was because of his effort to elude detection of his possession of the lottery slips. This charge for the defendant was therefore correctly refused.

The whole case considered, we think sufficient substantial errors appear, as noted above, to warrant a reversal of the judgment. So ordered.

Reversed and remanded.