190 So.2d 725

Joe **HAYWOOD**

v.

**STATE.**

**7 Div. 824.**

Court of Appeals of Alabama.

June 7, 1966.

Rehearing Denied June 30, 1966.

Oliver P. Head, Columbiana, for appellant.

 

Richmond M. Flowers, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant was convicted of a violation of Section 120(1), Title 14, Code of 1940, the solicitor's complaint charging that defendant while intoxicated by, or under the influence of liquor or narcotic drugs, did appear or travel upon or be along a public road or highway in Shelby County, Alabama.

The undisputed facts are that on Sunday, September 13, 1964, defendant, who lived on Route 1, Montevallo, and several companions drove to Birmingham in defendant's automobile. On the way back defendant let one of his companions, Robert Murray, drive. The defendant then went to sleep in the front seat on the passenger side. While the defendant was asleep Robert Murray drove the defendant's automobile off the highway and let another of the companions, Allen Ray Morris, drive. Allen Ray, just after he had taken the wheel and while pulling onto the main portion of the highway, hit another automobile driven by E. R. Bearden going in the opposite direction. The defendant had not awakened while the drivers were changing. The first thing he knew the collision had occurred.

The automobiles collided on a paved highway connecting Montevallo and Helena. The defendant's automobile came to rest "entirely on the paved portion of the road, and somewhere right in the middle of the road on both sides of where the center of the road would be." The Bearden automobile was resting partially on the pavement and partially off. Other vehicles could pass on the road only "one lane traffic at a time."

Mr. Bearden testified defendant got out of his automobile and came over to the Bearden car before Mr. Bearden got out. He never said a word. He was staggering and "he definitely looked like a drunk."

Mr. Bearden said he asked the defendant who was driving the car but he received no answer from him.

Mrs. Bearden, who was driving another automobile in front of her husband's car, saw the collision in her rear view mirror and ran back to the scene. When she got there her husband was still sitting in his car. Defendant was looking in the window of Bearden's car on the driver's side. She didn't hear him say anything and he appeared to be under the influence of intoxicating liquors or narcotic drugs. She later saw him standing on the side of the road.

Mr. Jack Armstrong, a Highway State Trooper was called to the scene. Defendant was standing on the side of the road and he appeared to be drunk. At first he was two or three feet off the pavement and then he got into the road and went over to the Bearden car.

The accident occurred on a straightaway. From the top of a hill to the south the vehicles could be seen for 100 yards. To the north the vehicles could be seen for a quarter of a mile. The Helena Police Chief was at the scene directing traffic when the state troopers arrived.

David M. Dial, a State Trooper, testified he went to the scene with Mr. Armstrong. When he first saw defendant he was standing on the shoulder of the road a few steps from the paved portion. Defendant was staggering and talking and witness could tell he was drunk. He tried to talk to defendant but couldn't understand what he was trying to say.

The defendant testified he was the owner of the car in which he was riding at the time of the collision. When the cars collided he was jammed against the windshield; his hand was injured so that he still can't hold a hammer with it, one of his teeth was knocked out and his head was bumped. He went and looked over in Mr. Bearden's car to see if anyone was hurt.

He was afraid to say anything because it was his car and he didn't know what kind of trouble he might get in so he just didn't say anything. He walked on over to where the other boys were upon the bank and in a few minutes the officer from Helena came and directed traffic.

On cross examination defendant testified he had been up the night before, Saturday night, in a poker game; that he had some gin to drink and he didn't go to bed until around 4:00 o'clock A.M., and slept until around 11:30 Sunday morning when he got up and drove to Birmingham. He did not drink anything after he left the poker game and did not drink anything in Birmingham. Before they got back into Shelby County, and twenty or thirty minutes before the collision, he drank one beer. He was asleep when the collision occurred; he was not under the influence of anything and he talked plainly and walked straight when the officers came.

We quote from appellant's brief his reasons for the insistence that he was due the general affirmative charge:

"* * * the State

A. Failed to prove a corpus delicti * * *

B. Because the Defendant *lacked criminal intent* * * *

C. *Because the Defendant's act of leaving his automobile* immediately after said automobile became involved in a collision accident and was then situated in a perilous position *was an act of compulsion*

and

*was such compulsion* "to be present, imminent, and impending and of such nature as to induce a well-grounded apprehension of death or

serious bodily harm" *so as to excuse the Defendant's act as being criminal* * * *

and

D. Because the Defendant was *required by law* under the 'hit and run' statute to leave his vehicle after the accident go give his name and address and registration license number of his vehicle and to see if he must render assistance to anyone injured in the other vehicle."

■ The compulsion or duress which will excuse an act which would otherwise constitute a crime "must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done." Moore v. State, 23 Ala.App. 432, 127 So. 796; Browning v. State, 31 Ala.App. 137, 13 So.2d 54; Thomas v. State, 134 Ala. 126, 33 So. 130.

"Where there exists such a compulsion as may excuse a person, it must have arisen without the negligence or fault of the person who insists on it as a defense"—22 C.J.S. Criminal Law § 44, p. 136.

■ The evidence was sufficient to prove the corpus delicti. Whether or not the act of the defendant in leaving his automobile and going upon the highway was for the purpose of complying with the requirements of the hit and run statute, Title 36, Sec. 118, Code 1940, or whether his leaving it was an act of compulsion as defined hereinabove were questions for the consideration of the jury. The requested general charge was correctly refused.

The court gave the following requested instructions as to the law applicable to the above theories of the defendant:

"13. I charge you, gentlemen of the jury, if you believe from the evidence that the Defendant honestly believed he was in danger of bodily harm if he stayed in his automobile at the scene of the ac-

cident, then I charge you he had a right to remove himself from said automobile to a place of safety, and you should acquit him.

"14. I charge you, gentlemen of the jury, if you believe from the evidence that the Defendant left his motor vehicle at the scene of the accident for the purpose of rendering reasonable assistance to some other person injured in such accident, then I charge you should acquit him.

"15. I charge you, gentlemen of the jury, if you believe from the evidence that the Defendant left his motor vehicle at the scene of the accident for the purpose of giving his name and address, and the registration and license number of his vehicle, then you should acquit him."

We find no error in the record. The Judgment is affirmed.

Affirmed.

CATES, Justice (concurring specially).

The Act of July 7, 1945, was directed mainly against the mischief of common drunks obstructing passage on the highways as pedestrians. Its civil consequence by creating a case of contributory negligence is noteworthy.

The Legislature has laid down a rule of conduct to protect the besotted pedestrian as well as the motorist. This law, being criminal and in derogation of Common Law, must be strictly construed. This I take to be the essence of Brown v. State, 38 Ala. App. 312, 82 So.2d 806.

Here I think there was sufficient evidence of Haywood's staggering from one part of the travelled roadway to another to make him a highway hazard.

Whether or not the mere status of "appearing" or being "along the public roads and highways" intoxicated can constitutionally be made a crime is not presented on this record. Certainly, after Shuttlesworth

v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176, a reasonable warning to cease and desist from standing in the way would seem requisite to impose criminal sanctions.

This 1945 created offense—highway drunkenness—should not be confused, as seems to have been done in Cooper v. State of Alabama, 5 Cir., 353 F.2d 729, with public drunkenness manifested by enumerated kinds of disorderly conduct. Code 1940, T. 14, § 120.

Here Haywood resembled the proverbial "headless chicken" and aggravated his recklessness by crossing and recrossing the road without apparent reason, save for one floundering foray to play Good Samaritan to Mr. Bearden. The jury seems to have inferred that Haywood was more hindrance than help.

Hence, I limit my concurrence to the result. I think the statute needs to be construed only so far as may be exigent under the facts of the case.