STATE OF NORTH CAROLINA v. HOWARD E. BORLAND

No. 743SC162

(Filed 5 June 1974)

**Automobiles §§ 117, 119; Criminal Law § 7— speeding and reckless driving
— compulsion — pursuit by unmarked car**

In a prosecution for reckless driving and for speeding 110 mph.
in a 60 mph zone, the trial court erred in instructing the jury that
no motorist has the right to speed or otherwise break the law even
if he may feel that some other motorist is trying to do him harm and
in failing to instruct the jury that if defendant did not know and had
been given no recognizable information that the pursuing car was a
law enforcement car, he had the right to attempt to evade his pursurer
when he had reasonable grounds to fear for his safety where defend-
ant's evidence tended to show that he was violating no law when the
chase began, that he accelerated when the driver of the car behind
him began blowing his horn and flashing his headlights, and that he
"took off" when three shots were fired from the pursuing car, and
the uncontradicted evidence showed that the pursuing car, driven by
a deputy sheriff, had no siren, blue light or insignia of any kind indi-
cating it was a law enforcement car, since the evidence was sufficient
to support a finding that defendant acted under a compulsion that
was present, imminent and impending and of such a nature as to induce
a well-grounded apprehension of death or serious bodily harm if de-
fendant did not elude his pursuer.

APPEAL by defendant from *Exum, Judge,* 17 September
1973 Session, Superior Court, CARTERET County. Argued in the
Court of Appeals 10 April 1974.

Defendant was convicted in District Court on the following
charges: Operation of a motor vehicle on a public highway
without due caution and circumspection and at a speed and in
a manner so as to endanger persons and property, and opera-
tion of a motor vehicle at a speed of 110 miles per hour in a
60 mile-per-hour zone. On appeal to Superior Court, he was
again convicted of both charges and appeals from judgments
entered on the verdicts. Facts necessary for decision are set
out in the opinion.

*Attorney General Morgan, by Assistant Attorney General
Boylan for the State.*

*Wheatley and Mason, P.A., by L. Patton Mason, for defend-
ant appellant.*

MORRIS, Judge.

The only evidence for the State in this case was that of the deputy sheriff who arrested defendant. It tended to show that the deputy, in uniform, but driving his own car which he had just purchased, came up behind the car driven by defendant, paced him for about ½ mile and clocked defendant's speed at in excess of 110 miles per hour; that this was on a four-lane highway with defendant driving in the left lane; that the deputy got in the right lane and pulled up beside defendant; that there were no markings or lights on his car because it was brand new; that he turned his four-way flasher on and turned on his interior light; that he had his I.D. card and badge; that he blew his horn, and the passenger in the right front seat turned around and looked at the deputy; that he held his "badge up like that to the window"; that the passenger turned and said something to the driver who accelerated his car; that several times thereafter, the deputy pulled along beside the defendant's car, blew his horn and motioned for defendant to move over; that about the fourth time he did this, he pulled his revolver and fired three shots "in the air right beside the car"; that defendant ignored that and continued speeding; that when they got to Havelock, defendant's car was smoking; that defendant slowed down to about 45 miles per hour and stopped at the stop light at Parker Ford intersection; that the deputy got out of his car, went up to defendant's car and was reaching for the door when defendant turned around and looked straight at the deputy "and he took off"; that he followed defendant through some streets of Havelock; that defendant failed to stop for another red light but got on the Lake Road going back into Carteret County; that while they were still in Craven County, defendant stopped, started to get out of the car; that the deputy who had stopped back of defendant, told him "if he knew what was good for him he wouldn't bring nothing out from under the seat"; that defendant jumped back into his car and "took off again"; that after they got back into Carteret County, defendant failed to make a curve and his car went into the woods; that by the time the deputy got to the car both occupants had run "into the swamp"; that the posted speed limit on Highway No. 70 at the time of the chase was 60 miles per hour. On cross-examination, the deputy testified that he had been a deputy sheriff for one month; that his car was a white 1972 Chevrolet and had no insignia on it indicating it was a sheriff's car; that it had no blue light nor siren on it, but was like any other Chevrolet an

individual would purchase from a dealer; that he was not alone but had with him a "long-haired fellow" who had been picked up on the beach for public drunkenness, had been jailed, and the deputy was carrying him home; that the passenger did not have on any sort of uniform; that he knew the boy in the other car could see the badge.

Defendant's evidence tended to show that he and his passenger were Marines stationed at Cherry Point; that on the night in question they had been to the beach, had stopped off and had a beer but left the place because they didn't know whether there would be trouble there and they had to go to work the next morning; that he was in his right lane of travel and came up on a white Chevrolet driving under the posted speed limit, so he passed and got back in the right lane; that soon the white car passed him and he saw "this long-haired guy sitting in the seat"; that the Chevrolet again got below the posted speed limit, so defendant passed it again; that they were the only two cars on the road; that he was driving about 60 miles per hour when the white Chevrolet pulled right up on defendant's bumper, began beeping his horn and flashing his high beam lights; that defendant had to adjust his rear view mirror because the lights were in his eyes; that the white car pulled partially alongside and the long-haired fellow was looking at defendant and the driver of the white car was still "beeping" his horn; that defendant accelerated a little and when he did so, he heard three shots; that his passenger ducked down on the floor; that he didn't believe he was going 110 miles per hour but whatever his speed was when he heard the shots, he "took off"; that he just identified two people in the car; that when the shots went off, he didn't know what to think; that the summer before a corporal was shot and killed in the highway and his body left in a junk yard; that when they got to Havelock, there was still no traffic; that he pulled up to the red light and stopped; that he saw somebody running around the car shining a flashlight "about that far from my face outside the window and I just took off and went right through the red light"; that he did not know whether this was the person with the gun so he went through some streets in Havelock and came out on the Nine Mile Road, the car still following; that he pulled over again and stopped and watched the driver of the following car get out and approach his car at which time defendant "took off" again and when he got a good distance ahead of the following car, he "just drove the car over to the wooded area there and parked the car in the ditch, got

out and ran into the woods and that was it"; that at no time did he know the driver of the following car was a deputy sheriff; that he had never heard of such a chase in a privately owned unmarked vehicle without sirens and blue lights; that he was scared; that his friend did not say anything about seeing the driver of the following car showing an I.D. card or badge; that "the first time he said anything to me, as soon as the guy started honking the horn, I asked him, I said, 'Well what's going on?' and he said, 'I don't know' and he looked out the window and said, 'I think he wants you to stop.' So, I said, 'Well that's the car with the hippie in it.', and we just kept on driving. I said, 'Well, hell, I'm not going to stop out here in the middle of nowhere.' So, he said, 'No, I wouldn't stop either.'" Defendant further testified on cross-examination that he did not stop at one of the well-lighted taverns in Havelock because he did not think that would prevent his getting shot if the man wanted to shoot him; that he saw no gun during the chase and that whoever shot the gun was close enough to the car to have shot him or his car if he had wanted to; that he was afraid; that he had not been at Cherry Point very long and did not know all the roads which was the reason he failed to go into the base instead of heading back toward Carteret County; that he had never been to Morehead City or Atlantic Beach before and was surprised to learn that he was back in Carteret County; that the deputy never put his hand on defendant's car door and defendant never saw the deputy's uniform; that he later reported his car stolen because he did not know who had it.

The passenger in defendant's car substantially corroborated defendant's testimony. He also testified that he never saw a badge or I.D. card and if it was held up it must have been after he got on the floor; that he did not get up from the floor at Havelock because he was afraid to stick his head up; that the defendant was not going over 5 miles per hour over the speed limit when the deputy began blinking his lights and blowing his horn; that he never saw anything which would have indicated to him that the man driving the white car had anything to do with law enforcement; that when they heard the shots they got scared, "lost their cool," and that he told the defendant "Let's get outta here" and that that's what they did.

The defendant submits two questions on appeal, both of which we think are well taken.

State v. Borland

He urges that the court erred in charging the jury, in effect, that there was no defense to the charges of speeding and careless and reckless driving, and that the court also erred in submitting what he called a special advisory issue as follows: "Did the defendant, Howard Lee Borland, know that an officer of the law was attempting to apprehend him and thereafter wilfully attempt to evade apprehension?" The court specifically told the jury, "In my view of the law, it has nothing to do with the guilt or innocence of the defendant on the particular crimes charged, but the court wants to know your answer to this issue for other purposes." The court went on to charge the jury, as to this issue, with respect to burdens of proof, contentions of the parties, and specifically instructed them that no motorist has the right to speed or otherwise break the law even if he may feel that some other motorist is trying to do him harm. The charge had the effect of requiring the jury to find the defendant guilty of speeding and reckless driving. Defendant admitted his speed during the chase but contended, and his evidence tended to show, that he had no idea he was being chased by a law enforcement officer and that he was violating no law when the chase began. The evidence is undisputed that the deputy's car was not equipped with any siren, blue light, or any insignia of any kind indicating it was a law enforcement car. Nowhere in the charge did the court refer to or explain or read to the jury the provisions of G.S. 20-183 (a) which are as follows:

"It shall be the duty of the law enforcement officers of the State and of each county, city, or other municipality to see that the provisions of this article are enforced within their respective jurisdictions, and any such officer shall have the power to arrest on sight or upon warrant any person found violating the provisions of this article. Such officers within their respective jurisdictions shall have the power to stop any motor vehicle upon the highways of the State for the purpose of determining whether the same is being operated in violation of any of the provisions of this article. Provided, that when any county, city, or other municipal law enforcement officer operating a motor vehicle overtakes another vehicle on the highways of the State, outside of the corporate limits of cities and towns, for the purpose of stopping the same or apprehending the driver thereof, for violation of any of the provisions of this article, he shall, before stopping such other vehicle, sound a siren or activate a special light, bell, horn, or exhaust whistle

approved for law enforcement vehicles under the provisions of G.S. 20-125 (b)."

We find no cases from this jurisdiction which are helpful in this situation. Defendant candidly admits that he was able to find no authority except by analogy to civil cases. The State did not cite us any authority for its position on these questions.

In 21 Am. Jur. 2d, Criminal Law, § 100, we find the general rule stated thusly:

"Though coercion does not excuse taking the life of an innocent person, it does excuse most, if not all, other offenses. In order to constitute a defense, the coercion or duress must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. Apprehension of loss of property, or of slight or remote personal injury, is no excuse. Furthermore, the danger must be continuous throughout the time when the act is being committed and must be one from which the defendant cannot withdraw in safety. The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm. And threat or fear of future injury is not sufficient."

This rule was applied in *Browning v. State*, 31 Ala. App. 137, 13 So. 2d 54 (1943). There the defendant was prosecuted for reckless driving. The officers had no warrant and defendant was not, according to the evidence committing a crime at the time of the attempted arrest from which he fled at high speed. He requested that the court charge the jury that no citizen has a duty to submit to an unlawful arrest and that an attempt to make an unlawful arrest on the part of any officer could be avoided by flight. This and the requests of similar import were refused. He was convicted and appealed assigning as error, among others, the failure of the court to charge on his right to flee under the circumstances. In reversing the trial court, the Alabama Court said:

"The defendant interposes in justification of his driving at an excessive rate of speed after he was fired upon as aforesaid that he was fleeing an unlawful attack made and being made upon him and that he had a right to do so to save himself from serious injury. Viz, that the act com-

plained of in the indictment was without free will upon his part but was the result of compulsion and duress because of the State's witnesses who sought to ambush him and unlawfully fire upon him. The authorities seem to approve such a defense if satisfactorily proven.

In *Arp v. State*, 97 Ala. 5, 12 So. 301, 302, 19 L.R.A. 357, 38 Am. St. Rep. 137, it was held: (1) *'The person committing the crime must be a free agent, and not subject to actual force at the time the act is done;* Thus if A by force takes the arm of B, in which is a weapon, and therewith kill C, A is guilty of murder, but not B.' (2) Further from the Arp case, is the proposition: *'No matter what may be the shape compulsion takes, if it affects the person, and be yielded to bona fide, it is a legitimate defense.'* (3) *'That always an act done from compulsion or necessity is not a crime. To this proposition the law knows no exception. Whatever it is necessary for a man to do to save his life is, in general, to be considered as compelled.'* (Italics supplied.)

Upon the question of self-preservation, even a dumb animal is thus imbued. A pertinent quotation is found in Bartlett's Familiar Quotations, p. 764, as follows: 'They say that the first inclination which an animal has *is to protect itself.'*

In 13 R.C.L. § 8, p. 708, it is said: 'It has been declared by statute that "a person forced by threats or actual violence to do an act is not liable to punishment for same." '

In 15 American Jurisprudence, § 318, p. 16:

'It seems that the law will excuse a person when acting under coercion or compulsion, for committing most, if not all, crimes, except taking the life of an innocent person. * * * The fear which the law recognizes as an excuse for the perpetration of an offense must proceed [as was claimed here] from an immediate and actual danger, threatening the very life of the perpetrator.' (Brackets supplied.)

C.J. Vol. 16, § 59, p. 91: 'An act which would otherwise constitute a crime may also be excused on the ground that it was done [as defendant contends here] under compulsion or duress. The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done.'

See also 22 C.J.S., Criminal Law, § 44. (Brackets supplied)." Id. at 140.

In *Brown v. State,* 227 Miss. 823, 87 So. 2d 84 (1956), the Court reached the same result where the defendant was driving his truck at some 15 to 20 miles per hour, and as he drove up to within 200 feet of a deputy sheriff and the mayor of the town, they flagged him down. Defendant kept going and the deputy and mayor shot at the truck twice each. Defendant accelerated his speed. The deputy sheriff got into his car and began to chase defendant who got up to 75 to 80 miles per hour and the deputy was not able to catch him.

In neither of these cases was there any evidence that defendant did not know his pursuers were law enforcement officers. In this case there was such evidence on behalf of the defendant and, in our opinion, the evidence would support a finding that the compulsion under which defendant acted was present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if defendant did not elude his pursuer.

We think, under the circumstances of this case and the uncontradicted evidence, the defendant was entitled to have the jury instructed that if they believed that the defendant did not know the pursuing car was a law enforcement car, and had been given no recognizable information that it was, he had a right to attempt to evade the pursuers when he had reasonable grounds to fear for his safety. While it might be that an instruction as to G.S. 20-183(a) would have rendered the submission of the advisory issue harmless, this was not done.

For prejudicial errors in the charge, the defendant is entitled to a new trial.

New trial.

Judges CAMPBELL and VAUGHN concur.