Appellant was charged with burglary in one count of a two-count indictment and with grand larceny in the other count. His appointed counsel, who has faithfully represented him here and in the trial court, filed a petition, subscribed and verified by defendant, that defendant-petitioner be treated as a youthful offender. The petition was granted pursuant to Ala. Code 1975, § 15-19-1. At the conclusion of the State's evidence on the trial of defendant as a youthful offender, defendant moved for an exclusion of the evidence as to each count. The court granted the motion as to the burglary court but denied it as to the larceny count. Thereupon the defendant proceeded with his evidence, which consisted of his own testimony.
The record before us is in two parts: (1) the certified "record on appeal," including "the clerk's record and the reporter's transcript," which "record on appeal" was filed in this Court on September 7, 1978, and (2) a certified copy of purported corrections of the trial court's judgment and entry of judgment on arraignment and its judgment and entry of judgment on its final determination of the case, which, as a supplement to the record, was filed in this Court on October 26, 1978.
Neither in the bench notes of the trial judge nor in the clerk's entries of orders of the trial court as shown by the "record on appeal" filed in this Court on September 7, 1978, is there a recital of any plea by defendant. Furthermore, such record on appeal, as shown by the trial judge's bench notes and the clerk's record of the formal judgment, shows that defendant was found guilty of grand larceny and was sentenced to three years in the custody of the Director of the Department of Corrections.
In the supplement to the record on appeal, it is shown, by revisions made by the trial judge in his bench notes and revisions (captioned partly as "corrected" or "amended" items) in the records of the clerk's office of the formalized orders and judgment of the trial court, that defendant pleaded not guilty. By the revision in the bench notes it is shown that defendant was found guilty as a youthful offender; by the revision in the records of the clerk's office, it is shown that he was adjudged a youthful offender. By both revisions it is shown that he was "committed to three years in the custody of the Director of the Department of Corrections."
Appellant urges that the judgment must be reversed by reason of failure of the record to show that defendant either pleaded to the charge against him or that he refused or neglected to plead and that a plea of not guilty was entered for him. He relies upon the proposition that in the absence of a recordation of any arraignment or joinder in issue, the judgment must be reversed on appeal. Huddleston v. State,37 Ala. App. 57, 64 So.2d 90, cert. denied 258 Ala. 579,64 So.2d 102 (1953); Rorex v. State, 44 Ala. App. 112, 203 So.2d 294
(1967); Newsome v. State, 49 Ala. App. 248, 270 So.2d 680
(1972). In response to appellant's contention, appellee argues the applicability of Rule 10 (f) of the Alabama Rules of Appellate Procedure as follows: *Page 354 
 "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court."
This Court has not been called upon in this case to take any action under said Rule 10 (f). We are not informed, except by vague references in briefs of parties, as to "any difference" that arose "as to whether the record truly discloses what occurred." The supplemental record shows that the corrections were made on September 13, 1978, as to which the parties seem to be in agreement. However, appellant complains that he was given no notice of any attempt by appellee to have the record corrected, and states:
 "Neither Ballou nor his trial counsel have any recollection of ever pleading to the indictment in this case, yet they had no opportunity to get their recollections on record because the amendment to the docket sheet and judgment order was done without notice or hearing."
Without questioning in any way the correctness of the statements made in the briefs of the parties, there is no issue now before us as to whether the record on appeal as supplemented is correct, and we can only conclude in this posture of the case that it is. We must decide any reviewable question by what the record on appeal now shows, not by what it previously showed. The present record reveals an appropriate arraignment, the interposition by defendant of a plea of not guilty and a judgment that is not now subject to the infirmity of the judgments reversed in Huddleston v. State, and other cases, supra. We do not understand that the trial court by making the particular correction was merely purporting to do what it should have done by appropriate arraignment procedure, but that by the correction the trial court is in effect candidly stating that defendant did in fact plead not guilty, but that such fact was "omitted from the record by error or accident" and that in the respect under consideration the record now "truly discloses what occurred in the trial court."
The other indicated correction of the record is of a somewhat different nature, and we doubt the applicability thereto of Rule 10 (f) ARAP. As we construe such indicated correction, it was to do that which the trial court should have done at the time it found defendant guilty, that is, it should have "adjudged" him "a youthful offender" and committed him "to the custody of the Board of Corrections." Ala. Code 1975, § 15-19-6. Appellant does not complain of the language of the judgment in this particular as the record now stands. As to this particular part of the judgment, if no correction had been made, we would have remanded the case for the rendition of the appropriate judgment as required by the Youthful Offender Act. Such an error of the trial court would not be a basis for a reversal of the judgment.
Appellant insists that at the time the State closed its case against defendant, there was no evidence that defendant was a youthful offender in the transgression charged against him of grand larceny. This position is not well taken, for the evidence at that time showed that there had been a larceny as charged in the indictment, of property sufficient in value to constitute grand larceny, particularly an "Admiral colored television." There is strong and convincing evidence that such television set, a bedroom suite, a lamp and a coffee table were all stolen from the house of William E. Barnes on July 18, 1977. A witness testified that at the time such items were unquestionably stolen and removed from *Page 355 
the Barnes' home, she saw defendant coming out of the house with something that looked "like he had something like a television or a record player." She saw him while he was standing in the door. She further said, "It was either a record player or a tape player or something, one of them big items, you know, like stereo." There was another person with him whom she did not know, but she stated positively that she recognized defendant as one in the door of the house, and removing an article as stated above out of the house. It was dark but there was a light on in the house in the living room. She was extensively cross-examined by defendant's counsel as to her ability to see and identify defendant by his facial features, but she steadfastly maintained that she could and did. Whether she could and did was a factual question, one determinable by the trial judge, properly trying the case without a jury.
Appellant also insists that there was a violation of the principles set forth in Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) as a prerequisite to the admission in evidence of the confession of an accused.[1]
Appellant predicates this insistence upon the contention that there was some conflict in the evidence of the two officers whose testimony taken together shows that an incriminating statement made by defendant that was admitted in evidence was made after he had been fully advised of all of his rights referred to in Miranda, that he had voluntarily and knowingly waived his right to an attorney and his right against self-incrimination, that he had been fully informed and understood his right to an attorney at the expense of the State, and that his incriminating statement met all of the pre-Miranda and post-Miranda requirements of voluntariness. There were some discrepancies between the testimony of one of the officers and that of the other, but they are discrepancies that are readily resolvable without any impairment of the substance of the testimony as a whole on the essentials as to the admissibility in evidence of one's confession. The court was not in error in admitting the statement of defendant, signed by him, as well as the lengthy statement signed by him that consisted of a plenary waiver of his constitutional rights and concluded:
 "No threats or promises have been made to me to induce me to sign this waiver of counsel and to make a statement to the officers."
Appellant's only other contention for a reversal is based upon the claim, and some evidence supporting it in the testimony of defendant, that whatever he did that might constitute the crime of larceny, either as an active participant or as an aider or abettor, was because of threats of physical harm against him by a loan shark, to whom he was indebted. Neither in the incriminating statement of appellant admitted in evidence nor in his testimony did he admit participating in the larceny by being at the house from which the property was stolen at the time it was stolen. In his written statement he said that he told a named "loan shark" about "a house that had some furniture in it and that he could break into the house and get the furniture and sell it for I owed [him] some money and this would make me even with him." The gist of his testimony as to any threat by the loan shark is as follows:
 "A I would pay him twenty-five dollars a week, and he told me it wasn't good enough. He wanted all of his money.
 "Q Wanted all of his money. Did he threaten you in any way if he didn't get his money?
 "A Yeah, he told me I — I saw what happened to a couple more guys that owed him some money and if I didn't pay him his money it would happen to me too.
". . . .
 "Q What had you seen that had happened to other people that had owed [defendant's creditor] money and hadn't paid him? *Page 356 
 "A A couple of guys with stockings over their face pulled a guy out of a club one night — Royal Palm — guy named . ., stays in East Gadsden, pulled him out of there, stopped traffic in the street, beat him down to the ground and left him that way.
 "Q Had you ever seen anything similar to this happen to anybody else that owed [defendant's creditor] money?
"A Yes, a boy, they called him Mac.
"Q What happened to him?
 "A He was found behind a house laying down. He was badly beaten.
 "Q And [defendant's creditor] told you something like that was going to happen to you if you didn't get his money right then?
"A Yeah.
 "Q Were you afraid something like that was going to happen to you?
"A Yes.
 "Q Did you believe him? Did you think he was capable of it?
"A Yes.
 "Q And is that when you told him you knew where he could get some furniture?
"A Yes."
Notwithstanding the mitigating nature of the testimony of defendant as to the pressure applied upon him by the "loan shark," it was for the trier of facts to determine the extent to which the claimed duress influenced defendant's action. The evidence does not as a matter of law meet the test set forth inHaywood v. State, 43 Ala. App. 358, 190 So.2d 725, 727, cert. denied 280 Ala. 171, 190 So.2d 728 (1966):
 "The compulsion or duress which will excuse an act which would otherwise constitute a crime `must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done.' Moore v. State, 23 Ala. App. 432, 127 So. 796; Browning v. State, 31 Ala. App. 137, 13 So.2d 54; Thomas v. State, 134 Ala. 126, 33 So. 130." (Emphasis supplied).
We have found no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.
[1] Defendant was eighteen years old when the alleged offense was committed. The exclusionary rule as to cofessions of juveniles (Ala. Code 1975 § 12-15-67) is not applicable. Ala. Code 1975 § 12-15-1 (3).