[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1251 
Appellant was indicted by the Colbert County Grand Jury for burglary in the third degree in violation of § 13A-7-7, Code 1975 (Supp. 1979). Appellant was arraigned and entered a plea of not guilty. The jury returned a verdict of guilty and the court, pursuant to the Habitual Offender Statute, sentenced appellant to twenty-two years' imprisonment in the State penitentiary.
Charles L. Montgomery testified he returned to his residence in Sheffield, Alabama, on the morning of March 5, 1981, in response to a phone call from a neighbor. Upon his arrival, he discovered the latch on his back door had been broken and the door forced open. The latch was not broken when he left for work.
He testified that two of his three sons owned several long guns, including two shotguns and a rifle. The guns were normally kept in the boys' bedroom in a gun rack and in a closet. The witness stated that he had not given appellant permission to enter his residence at any time.
Steven Nickens, a twelve-year-old next-door neighbor of Mr. Montgomery, testified he was in his residence on the morning of March 5, 1981, when he heard a noise. The noise sounded like somebody kicking something and sounded as if it came from the Montgomery residence. Steven went outside and saw appellant following another person through the Montgomerys' back door. He waited behind a truck and saw appellant come out of the Montgomery residence with some guns wrapped in a blanket which he placed in a white station wagon. Steven stated he said, "Somebody call the police," and then told appellant to put the guns back. The police arrived and placed appellant and an accomplice, Malcolm Green, under arrest. The witness exhibited some confusion on cross-examination by appellant's counsel between his original statement to police and his testimony at trial. The confusion pertained to whether he actually observed Malcolm Green kick the door and enter it ahead of appellant, and whether his brother Bobby was the one who called the police.
Melissa Nickens, Steven's sister, testified she also heard the noise on March 5, 1981, and went outside to the back of the Montgomery residence. She observed a white station wagon parked in the Montgomerys' back yard. After standing there for a time, she observed appellant come out of the Montgomerys' house with two guns wrapped in a blanket which he placed in the back of a station wagon. She told appellant, "You better put them back in the house because the police are on the way." Appellant hesitated, and then reentered the *Page 1252 
house with the guns. She stated she had seen appellant and Malcolm Green in the company of Tony Montgomery earlier that morning at the Montgomery residence. She saw the first two men leave the house, and then observed Tony drive away shortly thereafter. She heard the noise within a few minutes after Tony left the house.
Tony Montgomery testified he was at his father's house on the morning of March 5, 1981, when appellant and Malcolm Green stopped by about 9:00 for a drink of water and to use the phone. He told them he had to leave, and they left, and then he left. He stated Malcolm "Bubba" Green was his first cousin. He did not, however, keep frequent company with him or appellant. Tony stated he locked the door when he left the house, and that there was no damage to the back door when he left. He returned thirty minutes later and found the police at his house.
Doug Aycock, a Sheffield policeman, answered a call to the Montgomery residence on March 5, 1981. When he arrived, the police chief, Officer DeMaurice, and appellant were outside. He entered the house and found Malcolm Green lying on a bed in the back bedroom. He brought him outside and placed both Green and appellant under arrest. Green appeared to be under the influence of drugs. Appellant, however, appeared sober. Officer Aycock stated he found a gun in a blanket lying on a bed near the bed where Green was lying. Another gun was found inside a dresser with the stock protruding. The white station wagon was found to belong to Malcolm Green's father. The State rested at the close of Officer Aycock's testimony. Appellant's motion to exclude the State's evidence was denied.
Appellant called Bobby Nickens, who denied having called the police the day appellant broke into the Montgomery residence. On cross examination, he denied having told Officer Aycock that he had placed such a call on the day of the burglary. The appellant rested at the close of Nickens's testimony.
We note first that appellant's attorney presented no citation of authority for any proposition of law argued in his brief. He contends that the transcript is so defectively prepared that it denies him due process of law and a fair and impartial trial. He requests that this court order that a complete, new record be prepared in this case to correct the alleged egregious errors. Appellant fails, however, to delineate with particularity any error or omission in the record other than the misspelled name of one juror.
The appellant and his counsel have the duty to check the record and ensure its correctness before submitting it on appeal. Pope v. State, 387 So.2d 300 (Ala.Cr.App. 1980). Tyusv. State, 347 So.2d 1377 (Ala.Cr.App.), cert. denied,347 So.2d 1384 (Ala. 1977). This court is bound by the record, and the record may not be impeached by matters outside of the record, such as mere conclusory allegations of counsel in brief. Tyus, supra. Rule 10 (f), ARAP, which provides for the correction or modification of the record on appeal, was not invoked by the appellant. This rule specifically provides for the correction of an omission from the record. Pope, supra. The present record reveals an appropriate arraignment, the interposition of appellant's plea of not guilty, and a proper judgment entry. We can only conclude from the present posture of the case before us, that the record on appeal is correct. Ballou v. State,365 So.2d 352 (Ala.Cr.App. 1978).
Appellant argues that there was no evidence that appellant unlawfully broke into and entered the building in question and hence the State failed to prove its case. Burglary in the third degree is defined as follows:
"§ 13A-7-7. Burglary in the third degree.
 "(a) A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein."
Our review of the evidence above indicates there was ample evidence to prove a circumstantial *Page 1253 
case for the jury that appellant knowingly entered the Montgomery residence with the intent to commit a crime therein. The common law requirement for a breaking has been omitted by the new criminal code, although the evidence of the forceful entry here is relevant to prove appellant's mental culpability. Commentary to Ala. Code § 13A-7-7 (1975). The appellant's intent in entering the building is for the jury's determination and must be determined from the facts testified to by the witnesses and the circumstances as revealed by the evidence. Cook v.State, 409 So.2d 965 (Ala.Cr.App. 1981); Wright v. State,405 So.2d 74 (Ala.Cr.App. 1981). The State's evidence was sufficient in this regard to establish its case under the statute.
Appellant further contends that the trial court erred in refusing to give his requested written charge on the lesser offense of attempt to commit burglary in the third degree. The court's apparent basis for refusing to give this charge was that the charge was not given to the court until after the court completed its oral charge to the jury. It is well established that the trial court may not establish a specific time at which written charges must be tendered. Johnson v.State, 365 So.2d 123 (Ala.Cr.App.) cert. denied, 365 So.2d 130
(Ala. 1978). Any time during the trial, before the jury retires, an appellant may tender appropriate written charges for the court's consideration. Smith v. State, 51 Ala. App. 527,287 So.2d 238 (1973), cert. denied, 292 Ala. 750, 289 So.2d 808
(1974). We find however, that the court's refusal to consider the appellant's written charge was harmless error, in that the charge would have been properly refused, even if considered.Smith, supra. A charge on the lesser-included offense should not be given when there is no reasonable theory from the evidence to support such a proposition. When the evidence clearly shows the appellant is either guilty of the offense charged, or innocent, the charge on a lesser-included offense is not necessary or proper. Cooper v. State, 364 So.2d 382
(Ala.Cr.App.), cert. denied, 364 So.2d 388 (1978). Here the statute required a knowing entry of a building with the intent to commit a crime therein. The evidence presented demonstrated the completed crime, and nothing short thereof. The entry into the building was completed, and the evidence of appellant's intent to commit a crime while therein could lead but to one conclusion. There was no evidence presented of appellant's failure to consummate the crime of burglary in the third degree, which is a necessary element of an attempt. Ala. Code §13A-4-2 (1975) and the commentary thereto.
Appellant argues the trial court arbitrarily denied his motion for a hearing on his motion for new trial, as well as the motion itself. The decision to grant or deny a motion for new trial rests largely in the sound discretion of the trial court, and is not to be disturbed on appeal in the absence of an abuse of that discretion. Watson v. State, 389 So.2d 961
(Ala.Cr.App. 1980). In reviewing such ruling, this court will indulge every presumption in favor of the trial court's ruling.Jenkins v. State, 384 So.2d 1135 (Ala.Cr.App. 1979), cert. denied, 384 So.2d 1141 (Ala. 1980). The only ground of the motion for new trial argued by appellant on appeal is that the jurors were sequestered at some point in the trial in the presence of the court reporter, the court bailiff, and the deputy sheriff. Appellant offered no evidence or affidavit in his motion attesting to such an occurrence and the record reveals no such facts. Neither does appellant allege that the illegal occurrence was unknown to him during the trial. The motion does not indicate that any discussion by the jurors pertaining to the case took place in front of the parties mentioned by appellant. Wilson v. State, 387 So.2d 226
(Ala.Cr.App.), cert. denied, 387 So.2d 232 (Ala. 1980). Under these facts, we find no error in the denial of appellant's motion.
Appellant alleges that the record reveals the appellant was not in the courtroom at the time the jury returned its verdict. This omission appears to have been a clerical error, and the record as it appears before us now indicates appellant was indeed present at the time the jury returned its verdict. *Page 1254 
Our review of the record convinces us that appellant was present in the courtroom at all stages of the trial at which his presence was necessary.
Appellant contends that the State failed to give him reasonable notice of the prior convictions it intended to use in proceeding under the Habitual Felony Offender Statute.
Rule 6 (a)(3)(ii) of the Alabama Rules of Criminal Procedure — Temporary Rules requires that, at a reasonable time prior to the sentencing hearing, the defendant be given notice of the prior convictions upon which the State intends to proceed. While Rule 6 and the case law interpreting the statute and rule to date have not expressly stated the form of notice required, written notice appears to be the form of notice presumed proper. "Reasonable notice" has been interpreted as to time for notice, but not as to the form of notice. See Holleyv. State, 397 So.2d 211 (Ala.Cr.App.), cert. denied,397 So.2d 217 (Ala. 1981); Smith v. State, 401 So.2d 251, (Ala.Cr.App.), cert. denied, 401 So.2d 257 (Ala. 1981); Holsclaw v. State,406 So.2d 1019 (Ala.Cr.App.), cert. denied, 406 So.2d 1020 (Ala. 1981); Douglas v. State, 406 So.2d 1051 (Ala.Cr.App.), cert. denied, 406 So.2d 1053 (Ala. 1981).
In the instant case, the record indicates appellant was informed before trial of the State's intent to proceed under the Habitual Felony Offender Statute. The jury verdict was returned on June 5, 1981. A sentencing date of July 15, 1981 was set by the court at that time. At the sentencing hearing on July 15 both appellant and his counsel were sworn and testified they had received no written notice from the State of the convictions under which it would proceed. The State presented no evidence that it had given appellant written notice. The trial court, for the record, stated the following in regard to the notice given to appellant at the time of the sentence hearing:
 "BY THE COURT: Let the record show that, ah, the Defendant in the presence of the Court prior to the trial which began on June 4, 1981, was given notice by the District Attorney that he was proceeding under the Habitual Offender Act and let the record show that prior to the trial the defendant was made aware by the District Attorney and his attorney was made aware by the District Attorney that the State proceeded under the Habitual Offender Act. Let the record further show that on the 5th day of June, 1981, when the jury returned a verdict and the Judge adjudged the Defendant guilty of the offense as charged, the Court gave the Defendant and the Defendant's attorney notice that a pre-sentence report would be available dated July 8, 1981, no wait — strike that from the record — the Court made the Defendant and the Defendant's attorney aware of it that a pre-sentence report would be available and would be made available to the Defendant and the Defendant's attorney at least five days prior to the hearing — sentence hearing. Let the record show that the pre-sentence report was made available five days prior to the sentence hearing and the pre-sentence report is dated July 8, 1981, and that it has been a Court rule that any attorney that represents a defendant in a criminal case may pick up his copy of the pre-sentence report at the office of the probation officer at the courthouse. Let the record further show no motion prior to this date has been made by the defendant for a specific hearing on the alleged prior convictions of the defendant. And that the prior convictions are all listed in the pre-sentence report and I would like at this time the Defendant and the defendant's attorney to go over the pre-sentence report and any objections they wish to make to any of the listings of the prior convictions they can do at this time."
The record does not support the trial court's statement that it informed the appellant or his attorney of the pending sentencing report on the day the jury verdict was returned. However, appellant's counsel did not specifically deny this statement at the sentence hearing. Additionally, Patsy Davis, who prepared the pre-sentence report, testified she called the appellant's attorney's office the day before the sentence hearing and informed his secretary the report *Page 1255 
was available. Although the pre-sentence report is not present in the record, the court stated the report contained all prior convictions upon which the State might rely.
While we are not prepared to specify what particular form of notice may be considered reasonable in every incident in which the Habitual Felony Offender Statute is invoked, we are compelled to hold that more is required than the conflicting state of the record here reveals. Merely making "available" a pre-sentence report prepared for the court's benefit, which contains all manner of prior convictions and court proceedings in which appellant was involved, can not be equated with the State's positively giving notice of the convictions upon which the State intends to proceed under the Habitual Felony Offender Statute. We think Rule 6 requires some more affirmative action upon the part of the State to ensure the appellant has the time and opportunity to adequately prepare his case in this regard. Under the facts presented in this record, appellant was not given reasonable notice of the convictions under which the State intended to proceed. No other error to the substantial rights of appellant has been demonstrated. We remand this case for re-sentencing after the appellant has been given reasonable notice of the prior convictions under which the State intends to proceed.
AFFIRMED AND REMANDED FOR PROPER SENTENCING.
All the Judges concur.