This appeal arises out of a disbarment proceeding the Alabama State Bar instigated against the appellant, Warren Seymore Trammell. After conducting a full evidentiary hearing, the Disciplinary Board voted to disbar Trammell for violating four Disciplinary Rules of the Code of Professional Responsibility of the Alabama State Bar. That judgment is appealed and the following issues are raised: (1) that Trammell was forced to act in ways inconsistent with his duties as a member of the bar because of duress; (2) that law enforcement agencies in concert with a newspaper, entrapped Trammell, causing him to commit unethical acts; (3) that the Alabama State Bar produced insufficient evidence to sustain the judgment against the appellant; (4) that the Disciplinary Board improperly refused to allow the appellant to invoke the doctrine of equitable estoppel as a defense; (5) that Trammell's witnesses were improperly denied the opportunity to testify about his reputation in the community as to truth and veracity; and (6) that permanent disbarment is too harsh a sanction in this case.
 I. FACTS
Warren Seymore Trammell is an attorney and a former district attorney and state finance director. The Alabama State Bar charged him with violating four Disciplinary Rules of the Code of Professional Responsibility. Those rules are DR 1-102 (A)(4), (5), and (6), and DR 9-101 (C), and they read as follows:
"DR 1-102 — Misconduct.
"(A) A lawyer shall not:
"* * *
 "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, nor be guilty of willful misconduct.
 "(5) Engage in conduct that is prejudicial to the administration of justice. *Page 1170 
 "(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
 "DR 9-101 — Avoiding Even the Appearance of Impropriety.
"* * *
 "(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."
These charges arose out of an investigation the BirminghamNews conducted regarding allegations of illegal activity concerning paroles. The initial investigation implied that Trammell was possibly involved in a scheme to purchase paroles for inmates. The Birmingham News contacted the Attorney General's office with the information in the late spring of 1981, and the plans for a clandestine operation were set into motion.
With the cooperation of the Jefferson County Sheriff's Department, a plan was designed to discover any illegal activity on the part of Trammell. An inmate, James Harding, allegedly told a Birmingham News reporter, Mark Winne, that Trammell was trying to illegally obtain his parole. The plan the authorities devised was to have Harding contact Trammell and arrange a meeting between the appellant and Harding's "brother." In reality, Harding's "brother" was an undercover police agent named Timothy Kornegay. Harding arranged the meeting and Trammell met with Kornegay at the A.G. Gaston Motel in Birmingham. At their meeting, Kornegay gave Trammell money, which the Bar contends was a payment with which to bribe a member of the Alabama Board of Pardons and Paroles. In this way, Trammell would allegedly secure a parole for Harding.
The essence of the Alabama State Bar's case against Trammell consisted of six tape recordings. These tapes were made without the appellant's knowledge. Three of the taped conversations were between Trammell and Harding. Two of the taped conversations were between Trammell and Alberta Perdue, Harding's mother, and the final one was the taped conversation of a meeting of the appellant with undercover agent Kornegay.
On June 17, 1981, Trammell, after earlier seeing Harding in jail, met with agent Kornegay at the A.G. Gaston Motel. During portions of the meeting another undercover agent, a female detective with the Birmingham Police Department, was present in the same room with the two men. By way of hidden microphones, another police officer inside a van outside the motel recorded the conversation. At the meeting Kornegay posed as inmate Harding's out-of-town "brother" and he gave Trammell $1,200 in order to secure Harding's parole.
The Disciplinary Board listened to all six tape recordings and also heard Trammell's testimony explaining his actions. Before Trammell took the stand, character witnesses testified on his behalf. These witnesses were allowed to give their opinion about the appellant's general reputation in the community but were prohibited from expressing an opinion about Trammell's reputation for truth and veracity.
After considering the evidence, the Disciplinary Board found that Trammell had violated the Code of Professional Responsibility and ordered him disbarred. Trammell appeals that judgment.
 II. DURESS
Trammell asserts that any actions he may have taken that violated Disciplinary Rules were taken under severe duress. The appellant correctly maintains that duress can excuse an act which would otherwise be a crime. Haywood v. State, 43 Ala. App. 358, 190 So.2d 725 (Ct.App. 1966).
The appellant insists that undercover agent Kornegay placed him in fear for his life. This alleged fear resulted from Kornegay's dress, speech and general demeanor during the meeting at the A.G. Gaston Motel. The record indicates that at one point during that meeting Kornegay said to Trammell:
 "I hope you don't betray me, that will make things real bad because I don't want to have to come back down here *Page 1171 
looking for you. You know what I mean, don't you?"
At a subsequent point in the meeting Kornegay further stated:
 ". . . Well, I am going to trust you, I just hope you don't mess over me, cause I get awfully damn mad, and I will have to come looking for you."
These remarks form the basis for Trammell's duress defense.
We first address the issue of duress and whether the alleged duress was sufficient in this case to excuse Trammell's acts. In order for duress to excuse a criminal act, it "must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done." Ballou v. State, 365 So.2d 352,356 (Ala.Cr.App. 1978); Browning v. State, 31 Ala. App. 137,13 So.2d 54 (Ala.Ct.App. 1943) (emphasis omitted).
The parties dispute whether Kornegay's remarks or demeanor placed Trammell in "imminent and impending . . . apprehension." When Kornegay told Trammell he would "come looking" for him, the appellant responded that he was easy to find and even gave Kornegay one of his business cards. There is no evidence that Kornegay ever threatened Trammell with any kind of weapon.
When evidence regarding alleged duress is in dispute, a question of fact is presented for the jury. Perry v. State,368 So.2d 305 (Ala.Cr.App. 1978), rev'd 368 So.2d 312 (Ala. 1979),on remand 368 So.2d 312 (Ala.Cr.App. 1979); Fairbanks v. State,46 Ala. App. 236, 239 So.2d 908 (Ala.Crim.App. 1970). In this case, the trier of fact, the Disciplinary Board, decided that Trammell was not acting under duress when he took money from Kornegay. After reviewing all the evidence, we find there exists no compelling reason to reverse the Board's decision and to recognize duress as an excuse, for Trammell's acts.
 III. ENTRAPMENT
Trammell argues that the conduct of the authorities, with the aid of the Birmingham News, constituted entrapment. The elements of the entrapment defense have been set out as follows:
 "One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of `entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by the one who had the requisite criminal intent." 22 C.J.S. Criminal Law § 45 (2).
Jackson v. State, 384 So.2d 134, 139 (Ala.Cr.App. 1979); Seealso Owens v. State, 291 Ala. 107, 111, 278 So.2d 693 (Ala. 1973). The crucial factor for this Court to focus its review upon is not the action of the authorities or the BirminghamNews but, whether there was a predisposition of Trammell to commit an act in violation of the Code of Professional Responsibility. See United States v. Esquer-Gamez,550 F.2d 1231, 1233 (5th Cir. 1977); Hampton v. United States,425 U.S. 484, 488, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976).
We hold the meeting the authorities arranged at the A.G. Gaston Motel merely provided Trammell with an opportunity to violate his duty as a lawyer. The Disciplinary Board was authorized to find that, Trammell was well aware of his ethical and legal obligations and could not convincingly claim he was the unwary prey of a police set-up. Any disputed evidence regarding entrapment is viewed in the light most favorable to the prosecuting party, in the case sub judice the Alabama State Bar. United States v. Esquer-Gamez, 550 F.2d at 1233. When viewed in that light, we find that the appellant has presented no convincing evidence of entrapment.
 IV. INSUFFICIENT EVIDENCE
Trammell seeks reversal of the Disciplinary Board's judgment because its findings *Page 1172 
were allegedly based on insufficient evidence. The applicable standard of review in disciplinary proceedings is:
 "Under the present rules of disciplinary enforcement, where the members of the Disciplinary Board hear the evidence and observe the demeanor of the witnesses, the Supreme Court, on review, will presume that the Board's decision on the facts is correct; and the disciplinary order will be affirmed unless the decision on the facts is unsupported by clear and convincing evidence, or the order misapplies the law to the facts."
Hunt v. Disciplinary Board of Alabama State Bar, 381 So.2d 52,54 (Ala. 1980) (footnote omitted); cf. Dodd v. Board ofCommissioners of the Alabama State Bar, 365 So.2d 975 (Ala. 1978).
In this matter, several witnesses, including Trammell, Kornegay and the Birmingham News reporter, actually testified before the Disciplinary Board. The Board listened to the secretly recorded conversations. The appellant has not shown the Board's judgment to be unsupported by "clear and convincing" evidence. He has not raised a persuasive argument that the law was misapplied. To the contrary, ample evidence is present in the record to support the judgment.
 V. EQUITABLE ESTOPPEL
Trammell argues the Alabama State Bar should be equitably estopped from disbarring him, because the inmate Harding and his bogus brother convinced him that they were truly interested in purchasing a parole. Trammell asserts that in good faith he relied on their assurances to his own detriment.
This argument has no legal basis. The doctrine of equitable estoppel is available to protect innocent parties. A party's conduct "must reflect the maxim of `clean hands'" in order for that party to invoke the doctrine of equitable estoppel.Draughon v. General Finance Credit Corporation, 362 So.2d 880,884 (Ala. 1978); Anders v. Sandlin, 191 Ala. 158, 67 So. 684
(1914). The evidence in this proceeding proves that the appellant's conduct did not satisfy this maxim. The doctrine of equitable estoppel has no application in this case.
 VI. GOOD CHARACTER EVIDENCE
Trammell attempted to introduce testimony at the proceeding regarding his reputation for truth and veracity. The appellee made a timely objection to such testimony and the Disciplinary Board sustained the objection.
Trammell, before actually testifying himself, attempted to offer evidence about his reputation for truth and veracity. Testimony which bolsters a party's reputation for truth and veracity is inadmissible unless that party's credibility has been impeached. McPhearson v. State, 271 Ala. 533,125 So.2d 709 (1961); Gissendaner v. State, 54 Ala. App. 535,310 So.2d 255, appeal after remand 338 So.2d 1025 (Ala.Cr.App. 1975).
Since no opportunity to impeach Trammell had yet arisen when he attempted to bolster his reputation, the Disciplinary Board correctly sustained the objection on this issue.
 VII. APPROPRIATE DISCIPLINE
Trammell argues that his conduct does not warrant the harsh sentence of disbarment. He bases this contention on the premise that his actions were in good faith and that he was a victim of coercion and fear. He also cites his advanced age.
The evidence indicates that the appellant voluntarily committed unethical acts and that he should have recognized the possible consequences for those acts. The appellant is a lawyer of great and varied experience and not a novice to the legal profession. The charges against Trammell were of sufficient severity that the penalty of disbarment is appropriate in this case.
 VIII. CONCLUSION
We have fully reviewed the proceedings of the Disciplinary Board and affirm its action to disbar Trammell.
AFFIRMED. *Page 1173 
TORBERT, C.J., and MADDOX, FAULKNER, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.