On November 18, 1988, a demonstration against abortion was staged at the Birmingham Women's Medical Clinic in Birmingham, Alabama. As a result of this demonstration, approximately 100 protesters, including the appellants in this case, William D. Allison III and Lois Guice Coleman, were arrested and charged with criminal trespass in violation of the Birmingham Municipal Code. The appellants stipulated to a prima facie case in the Birmingham Municipal Court and they were found guilty and were fined $25.00. The appellants appealed their convictions to the Jefferson County Circuit Court, where they were tried by a jury in separate trials. The evidence at both trials showed that on November 18, 1988, numerous Birmingham police officers, expecting a protest on that day, arrived at the Birmingham Women's Medical Clinic around noon. Police tape was placed across the property line of the clinic. A short time later, approximately *Page 1379 
200 protesters gathered at the clinic and most of them crossed the police barrier and blocked the entrance to the clinic. The director of the clinic, Belinda Henson, gave at least four warnings to the protesters over a police bullhorn. Her statements to the protesters were that "You have been advised that you have entered or are remaining unlawfully upon the premises of Birmingham Women's Medical Clinic. I am asking you to leave or you will be arrested." Captain Cochran of the Birmingham Police Department also gave several warnings to the same effect over the bullhorn. When the protesters refused to move, Cochran told Lieutenant Trucks to begin arresting the protesters. Before Trucks made an arrest, he would ask each protester whether they would cooperate and leave the premises. If a protester refused to leave, and nearly all of the protesters did refuse, Trucks would arrest that protester for criminal trespass. Trucks arrested both of these appellants at this protest.
The juries found both appellants guilty of criminal trespass. Allison was fined $35 and Coleman was fined $10. Their cases have been consolidated on appeal.[1]
 I
Prior to both trials, the City of Birmingham made a motion in limine asking the trial court to
 "preclude the defendant[s], her[his] witnesses, and/or defense counsel from referring in any manner to the following subject matter and/or defenses:
 "1. Justification or motive for the alleged act committed by herself[himself], another, or third person.
 "2. That defendant's beliefs afforded her[him] a legal justification of defense for her[his] act, for herself[himself], another or third person.
 "3. Medical or scientific evidence regarding 'the humanity of the unborn child.'
 "4. Medical or scientific evidence regarding the health and safety of the unborn children of women seeking abortion.
 "5. Use of force in defense of another or a third person.
 "6. Use of duress in defense of another or a third person.
 "7. Asserting statutory or case law allegedly relating to inducing or attempting to induce abortion, miscarriage or premature delivery of a woman. (Ex.Sec. 13A-13-7, Code of Alabama, 1975).
 "8. Emergency, necessity and/or coercion to save another life or a third person.
 "9. Bona fide belief argument, based on moral, ethics.
 "10. Abortion or the 'medical procedures' performed at the Birmingham Women's Medical Clinic or at any abortion clinic; or to feticide." (C.R. 398-99.)[2]
The trial court granted the City's motion, and the appellants contend this was error. Specifically, the appellants argue that they should have been allowed to put on evidence concerning the defense of necessity, defense of third persons, duress, and mistake of law and of fact. We will address each of these defenses separately.
 A
Section 13A-3-21(a), Code of Alabama 1975, states that "[e]xcept as otherwise expressly provided, justification or excuse under this article is a: defense." Various defenses are set out in the subsequent statutes (see § 13A-3-22 through §13A-3-30). Although the specific defense of necessity is not codified within these statutes, the commentary to § 13A-3-21
explicitly states that "[w]hile much law is covered in this article, no codification can be complete, and these formulations are not intended to preclude *Page 1380 
further judicial, or statutory, development of these, or other, justifications."
Thus, our recognition of the necessity defense must be derived from the common law.[3] One of the best compilations that we can find concerning the common law defense of necessity is set out in Note, Necessity as a Defense to a Charge of CriminalTrespass in an Abortion Clinic, 48 U.Cin.L.Rev. 501 (1979).[4]
 "Necessity is a type of justification defense. Conduct which otherwise would lead to civil or criminal liability is justified because it is socially acceptable and desirable under the circumstances. When a situation forces an individual to choose between obeying the law or breaking it to avoid a greater harm, society prefers that the individual choose the lesser evil. The defense is based on determining that the act, though technically violative of the law, is legal because the factual situation negates the validity of the normal rules of liability. The penal laws are designed to meet only the ordinary exigencies of life. When rare and extraordinary circumstances arise, necessity justifies conduct 'which promotes some value higher than the value of literal compliance with the law. The defense applies only when the actor makes a voluntary choice not to comply with the law, and focuses on the desirability, not the possibility, of compliance.
 "Although recognized long ago in the common law, the defense of necessity is poorly developed in Anglo-American jurisprudence. Fearing its abuse, few courts were willing to accept the defense; those courts that did accept it failed adequately to express their rationales in terms of the relevant principles. The defense is most often confused with duress, an excuse defense. Excuse, which includes mistake and insanity as well as duress, focuses on the individual and his capacity to commit the act. If excusing conditions are found, only this particular defendant is excused, although his action is not termed legal. In contrast, if an action is justified by necessity, then a new rule of law is created which instructs all future actors faced with the same conflict of values how to act.
 "Despite confusing case law, the necessity concept is 'anciently woven into the fabric of our culture.' The common law elements of the defense are: 1) the harm must be committed under the pressure of physical or natural force, rather than human force; 2) the harm sought to be avoided is greater than (or at least equal to) that harm sought to be prevented by the law defining the offense charged; 3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; 4) the actor must be without fault in bringing about the situation; and 5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. Most cases do not require that an actual peril exist; a well-founded and reasonable belief is sufficient. Therefore, if an actor is actually mistaken in his belief, he may still use the defense. Although the defense is subjective as to facts, it is objective as to values. The action chosen must be the lesser evil."
Note, supra, at 504. Although the early cases required that the harm to be avoided be caused by natural forces, the modern trend among courts, legislatures, and commentators has been to recognize harm caused by human beings as well. See City of St.Louis v. Klocker, 637 S.W.2d 174, 176 (Mo.App. 1982); Note, supra, at 508-09. However, "[w]hen the harm emanates from a human source, the harm must be unlawful[5] *Page 1381 
before the necessity defense can be used." City of Akron v.Detwiler, No. 14385, slip op. at 6-7 (Ohio App. July 1990) (1990 WL 95683); Klocker; Cleveland v. Municipality ofAnchorage, 631 P.2d 1073 (Alaska 1981).
Numerous courts have considered the necessity defense in cases of criminal trespass involving abortion clinics and virtually every court has rejected the use of this defense when asserted in this context,[6] see State v. O'Brien, 784 S.W.2d 187,192 (Mo.App. 1989), holding that "political protests of abortion cannot create a privilege to violate criminal trespass laws under the defense of necessity." City of Kettering v.Berry, 57 Ohio App.3d 66, 567 N.E.2d 316 (Ohio App. 1990). Although the courts have employed various reasons for rejecting the necessity defense in trespass-abortion clinic cases, most of the courts which have considered these cases have found that because abortion is legal, see Roe v. Wade, 410 U.S. 113,93 S.Ct. 705, 35 L.Ed.2d 147 (1973),[7] the harm sought to be avoided is not unlawful and, thus, the greater harm is the trespass.See Cleveland; Bird v. Municipality of Anchorage, 787 P.2d 119
(Alaska App. 1990) ("necessity defense applies only where alleged harm sought to be avoided arose either from the physical forces of nature or from unlawful human acts," other lawful alternatives available and "actions not reasonably designed to actually prevent the threatened harm," and defendants "failed to show that the harm they sought to avoid was greater than the harm reasonably foreseeable from their actions"); Crabb v. State, 754 S.W.2d 742 (Tex.App. 1988),cert. denied, ___ U.S. ___, 110 S.Ct. 65, 107 L.Ed.2d 32 (1989) ("harm sought to be avoided, abortion, was not clearly greater than the harm caused by the trespass, which was the loss of the constitutional right to privacy"); People v. Krizka, 92 Ill. App.3d 288, 416 N.E.2d 36, 48 Ill.Dec. 141 (1980) (" 'injury' prevented by the acts of criminal trespass is not a legally recognized injury"); Erlandson v. State, 763 S.W.2d 845
(Tex.App. 1988), cert. denied, ___ U.S. ___, 110 S.Ct. 152,107 L.Ed.2d 110 (1989) (necessity defense not allowed because defendants failed "to show that the clinic's staff or its patrons were acting other than within the constitutionally recognized principles which permit abortion"); Klocker
(threatened harm must be public or private injury and since abortions "are a constitutionally protected activity and, therefore, legal, their occurrence cannot be a public or private injury"); Commonwealth v. Markum, 373 Pa. Super. 341,541 A.2d 347, appeal denied, 520 Pa. 615, 554 A.2d 507 (1988),cert. denied, 489 U.S. 1080, 109 S.Ct. 1533, 103 L.Ed.2d 837
(1989) (justification or necessity defense not available because abortion is constitutionally sanctioned activity and thus cannot be considered "public disaster" within meaning of justification statute); Kettering (abortion, because it is legal, cannot be classified as a harm and thus "greater harm per se" is the criminal trespass); Detwiler (abortion not legally recognized harm); Gaetano v. United States,406 A.2d 1291 (D.C. 1979); People v. Crowley, 142 Misc.2d 663,538 N.Y.S.2d 146 (Just.Ct. 1989); O'Brien (necessity defense not available "when the harm sought to be avoided [abortion] remains a constitutionally protected activity and the harm incurred [trespass] is in violation of the law"); Buckley Cityof Falls Church, 7 Va. App. 32, 371 S.E.2d 827 *Page 1382 
(1988) (other legal alternatives available); State v. Horn,126 Wis.2d 447, 377 N.W.2d 176 (1985), aff'd, 139 Wis.2d 473,407 N.W.2d 854 (1987) (other alternatives available); SigmaReproductive Health Center v. State, 297 Md. 660, 467 A.2d 483
(1983) (other legal alternatives available and "necessity is not a valid defense for criminal trespass charges involving political or moral protest, particularly those involving abortion clinics"); Pursley v. State, 21 Ark. App. 107,730 S.W.2d 250 (1987) (no evidence of imminent danger or injury);State v. Rasmussen, 5 Fam.L.Rep. (BNA) 2037, 2038 (Hennepin County Ct., Minn., Oct. 5, 1978).
We must also agree that necessity is not a valid defense to the charge of criminal trespass involving abortion clinics. Clearly, abortion is one of the most controversial and divisive issues in this country. However,
 "The United States Supreme Court has held that a woman's right to choose abortion is constitutionally protected. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Consequently, the abortion services provided by the [Birmingham Women's Medical] clinic are legal. In light of Roe it is not appropriate for this court to determine the legal status of abortion. We therefore hold that it is unreasonable to believe that one must commit an act of criminal trespass in order to prevent an activity that is legal and constitutionally protected. If appellants attempt to change the legal status of abortion, they must do so within channels provided by our democratic form of government. A contrary holding would allow an individual to violate the law without sanction whenever he felt the government had not made the proper choice between conflicting values."
Horn, 126 Wis.2d at 455-456, 377 N.W.2d at 180.
The appellants argue that the United States Supreme Court's decision in Roe v. Wade regarding the legality of abortion is inapplicable because "it dealt with direct state action [as opposed to action by individuals] prohibiting abortion." (Appellants' brief, p. 51.) This very argument was addressed and dismissed by the Illinois Appellate Court in Krizka. In that case, the court stated that this "argument ignores the fact that defendants' convictions did not arise from the violation of the constitutional rights of pregnant women, but rather, were the result of defendants' acts of criminal trespass." Krizka, 92 Ill. App. 3d at 290, 416 N.E.2d at 37, 48 Ill.Dec. at 142. We must agree.
The appellants also contend that the State of Alabama has made a legislative choice that abortion is illegal in Alabama and, thus, that the necessity defense is available to them because the harm sought to be avoided is illegal under Alabama law. Section 13A-13-7 provides:
 "Any person who willfully administers to any pregnant woman any drug or substance or uses or employs any instrument or other means to induce an abortion, miscarriage or premature delivery or aids, abets or prescribes for the same, unless the same is necessary to preserve her life or health and done for that purpose, shall on conviction be fined not less than $100.00 nor more than $1,000.00 and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than 12 months."
This argument lacks merit. Roe v. Wade held that statutes like the one above are unconstitutional. Robak v. UnitedStates, 658 F.2d 471, 475 (7th Cir. 1981). Furthermore, our holding
 "that a justification defense may not be raised if the asserted 'harm' is legal is not dependent upon whether such conduct has been made legal through legislative choice or judicial fiat. We live in a society of laws and no individual is entitled to raise himself above the law. We are each bound by the law no matter its source. Were we free to pick and choose which laws we wished to obey, the result would be a society of strife and chaos. Therefore, even if the legislature [has] *Page 1383 
made a clear choice regarding abortion[8], the justification defense [is still] unavailable because abortion is lawful by virtue of the United States Constitution[9]. Certainly, justification may not be asserted as a grounds for interference with a person's right to free speech even though that right has not been legislatively approved. Free speech has been constitutionally approved, as has a woman's right to abortion. Democracy allows the citizenry to protest laws of which they disapprove. But they must nonetheless obey such laws or face the legal consequences. To allow the defense of justification to those who willingly and intentionally break the law would encourage criminality cloaked in the guise of conscience."
Markum, 373 Pa.Super. at 348, 541 A.2d at 350.
 B
Section 13A-3-23(a), Code of Alabama 1975, provides:
 "A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he uses a degree of force which he reasonably believes to be necessary for the purpose."
"Unlawful physical force" must be used by the other person in order to support a defense-of-third-persons claim. As we stated above, abortion is not unlawful and the Birmingham Women's Medical Clinic was licensed to perform abortions at this time.See Crabb; Erlandson. There is no evidence that any unlawful physical force was used against the women patients of the clinic. Furthermore, this defense justifies one's use of physical force to defend himself or another person. "By the express language of the statute, the defense only applies when the defendant has used force." Erlandson, 763 S.W.2d at 852. There is no evidence in the record that either of these appellants used force. We also note that the identification of fetuses as "persons" in the abortion context has been rejected by the United States Supreme Court in Roe v. Wade. Cleveland, 631 P.2d at 1080; Bobo v. State, 757 S.W.2d 58, 63 (Tex.App. 1988). Whatever rights the unborn have in Alabama in tort or probate or other areas of the law, these rights remain subject to the United States Constitution. O'Brien, 784 S.W.2d at 192. Thus, the defense-of-third-persons defense was not available to these appellants.
 C
Although the trial judge did charge the jury on the defense of duress, the appellants argue that he did not allow them to present any evidence on the duress defense. Section13A-3-30(a), Code of Alabama 1975, states: "It is a defense to prosecution that the actor engaged in the proscribed *Page 1384 
conduct because he was compelled to do so by the threat of imminent death or serious physical injury to himself or another." "In order for duress to excuse a criminal act, it [the threatened harm] 'must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done.' "Trammell v. Disciplinary Board of the Alabama State Bar,431 So.2d 1168, 1171 (Ala. 1983). There is absolutely no evidence that these appellants were compelled to commit this trespass by the threat of imminent death or serious physical injury to themselves or another person. A threat is defined as "[a] communicated intent to inflict physical or other harm on any person or on property. A declaration of an intention to injure another or his property by some unlawful act." Black's LawDictionary 1326 (5th ed. 1979). The threats must be unlawful and, as we have already stated, abortion is not unlawful under the present law. Nor was there any evidence that the threatened harm was imminent. Thus, the defense of duress was unavailable to these appellants. Sigma; Cleveland. Although the trial court improperly charged the jury on the defense of duress, the appellants were certainly not harmed by this error.
 D
The appellants also contend that the trial judge should have allowed them to present evidence on mistake of fact and mistake of law. Section 13A-2-6, Code of Alabama 1975 provides that,
 "(a) A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief of fact unless:
 "(1) His factual mistake negatives the culpable mental state required for the commission of an offense; or
 "(2) The statute defining the offense or a statute related thereto expressly provides that such a factual mistake constitutes a defense or exemption; or
 "(3) The factual mistake is of a kind that supports a defense of justification as defined in article 2 of chapter 3 of this title.
 "(b) A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless his mistaken belief is founded upon an official statement of the law contained in a statute or the latest judicial decision of the highest state or federal court which has decided on the matter.
 "(c) The burden of injecting the issue of mistake of law under subsection (b) of this section is on the defendant, but this does not shift the burden of proof.
 "(d) A mistake of law, other than as to the existence or meaning of the statute under which the defendant is prosecuted, is relevant to disprove the specific state of mental culpability required by the statute under which the defendant is prosecuted."
The appellants seem to argue that they should have been relieved of liability under § 13A-2-6(a)(3) for the offense of trespass because they contend their factual mistake, their belief that the unborn are persons, would have supported a defense-of-third-persons defense. First of all, we are not sure that the appellants' beliefs were a mistake of fact rather than a mistake of law, in light of the United States Supreme Court's decision in Roe v. Wade, in which the Court held that fetuses are not persons with regard to the abortion context. However, assuming that their beliefs were a mistake of fact, we do not believe that they were entitled to claim mistake of fact as a defense under § 13A-2-6(a)(3). The typical example of a mistake of fact under (a)(3) is as follows:
 "[D]uring a heated verbal altercation between X and Y, X, who has a general reputation for violence and is rumored to carry a pistol, suddenly reaches for his bulging pocket, and Y, in fear of great bodily harm, strikes X a stunning blow in the face with his fist. Although X did not have a pistol, Y is not criminally liable for assault and battery because his factual mistake was a kind that supports a defense of justification under *Page 1385 
§ 13A-3-22." (Commentary to § 13A-2-6.)
In the above example, Y is not criminally responsible, because he had reason to believe that X was about to pull a gun and shoot him (X had a reputation for violence, was rumored to carry a pistol, and reached for his bulging pocket). Due to Y's mistake of fact (X did not have a gun), he could claim self-defense. The appellants in brief state that "[i]f one assumes that the court's interpretation of Roe v. Wade is correct, defendants in the instant case were clearly mistaken." (Appellants' brief, p. 60-61). Although the appellants were mistaken, the question is whether their mistake was reasonable. Certainly, the appellants cannot argue that their mistake of fact (or law) was reasonable, since they were obviously aware of Roe v. Wade prior to the time they took their action. Furthermore, even if the mistake had been reasonable, this mistake would not support a defense-of-third-persons defense because the other requirements of that defense were not met. As we stated above, the appellants were not entitled to claim the defense of defense of third persons because the other person (the abortion clinic) was not using "unlawful physical force" and there was no evidence that the appellants used any type of physical force. Thus, the trial court properly refused to allow the appellants to put on evidence of mistake of fact. See alsoHoffart v. State, 686 S.W.2d 259 (Tex.App. 1985), cert.denied, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986) (trial court did not err by failing to give instruction on mistake of fact in case involving criminal trespass of abortion clinic).
Further, the appellants claim that they were not criminally responsible due to a mistake of law under § 13A-2-6(d). They argue that their "mistaken beliefs relate[d] to the requisite mental state." The offense of criminal trespass requires that one act knowingly. The commentary to the criminal trespass statutes (§ 13A-7-2 through § 13A-7-4) states, " 'Knowingly' is an element of all degrees of criminal trespass. Hence a person who trespasses upon premises accidentally, or who honestly believes that he is licensed or privileged to enter is not guilty of any offense, irrespective of possible liability on the civil side." The appellants argue that they reasonably believed that they were licensed to remain because they thought they that one of the justification defenses would be available to them.[10] Again, we are not convinced this is a mistake of law rather than a mistake of fact. If indeed it is a mistake of fact, the mistake is clearly unreasonable in light of our discussion above. However, if it is a mistake of law, their argument must fail under § 13A-2-6(d), which provides that "[a] mistake of law, other than as to the existence or meaning of the statute under which the defendant is prosecuted, is relevant to disprove the specific state of mental culpability required by the statute under which the defendant is prosecuted." The appellants claim that their mistake that a justification defense would be available to them is relevant to disprove the claim that they acted "knowingly." This is incorrect. When a defendant is entitled to raise a justification defense, he admits that he knowingly committed the offense. However, he claims that his conduct is excused or justified. *Page 1386 
Thus, the appellant was not entitled to claim a mistake of law.
In light of our decision that the appellants were not entitled to claim any of the justification defenses or a mistake of fact or of law, the trial court correctly granted the prosecution's motion in limine and properly refused to allow them to offer any evidence to support these justification claims. Erlandson; Horn.
 II
The following occurred on re-direct examination of Belinda Henson by the prosecutor during Allison's trial:
 "Q. I see. Now, do you perform pap smears at the Birmingham Women's Medical Clinic?
"A. Yes, sir.
"Q. Pregnancy tests?
"A. Yes, sir.
 "Q. Are birth control pills issued at the advice and consent of the doctors there?
"A. Yes, sir.
 "Q. In other words, you do a multitude of things there?
"A. Yes, sir.
"Q. Is that correct?
"A. Yes, sir.
 "THE COURT: I don't think this is admissible." (R. 172-73.)
The prosecutor then pursued another line of questioning. On recross-examination, the following occurred:
 "Q. Ms. Henson, Mr. MacMahon asked you about several types of services, and I believe he mentioned the pap smears. You also perform abortions; is that not correct?
"MR. MacMAHON: Objection, Your Honor.
 "THE COURT: I also told him that that was inadmissible.
"MR. SCOFIELD: Your Honor, he opened the door.
 "THE COURT: I didn't let him open the door, and I told you I wasn't letting it in." (A.R. 173-74.)
Appellant Allison contends that he should have been allowed to ask Henson whether the clinic performed abortions, since the prosecutor opened the door on the subject by asking her whether the clinic performed pap smears and pregnancy tests. We disagree. The trial judge stated that he thought the prosecutor's questions called for evidence that was irrelevant and inadmissible at the time the questions were asked. When defense counsel questioned Henson about whether the clinic performed abortions, the trial judge sustained the objection and told defense counsel that he had not let the prosecution open the door on this matter and he was not allowing defense counsel to go into the matter of abortion. "The determination of the relevancy of a particular line of questioning lies within the sound discretion of the trial court." Bryan v.State, 453 So.2d 765, 767 (Ala.Crim.App. 1984). Clearly, the trial court did not abuse his discretion in this instance. Furthermore, we fail to see how Appellant Allison was harmed by the trial court's sustaining the objection to defense counsel's question as to whether the clinic performed abortions. The fact that this clinic performed abortions was well known to this jury. In fact, the trial judge told the jury in his opening statement to them that the clinic was an abortion clinic. Thus, we find no error here.
 III
During Coleman's trial, the prosecutor introduced into evidence a videotape of the protest. The videotape was a compilation of two separate tapes of the incident. However, portions of the two tapes had been deleted in the compilation, allegedly because it was believed that the deleted portions violated the motion in limine. On cross-examination, defense counsel sought to introduce into evidence a videotape of the deleted portions of the original two tapes. Defense counsel argued that since the prosecutor had offered a portion of the videotapes, he had a right to play the deleted portions of the videotapes. Defense counsel's tape was then played for the court outside the presence of the jury. After the tape was played, the prosecutor moved to exclude the tape and stated: *Page 1387 
 "Our motion in limine which is prior to this trial as I understand was granted, Your Honor. One of the grounds was that they would not go into the issue of abortion. On the segment of the tape that was just played from 12:42 through 12:43 Reverend Pinto was making an oration out there to all people about abortion and life and so forth and so on, which this Court I understood had prohibited from coming in. It's a violation of the Court's order.
 "Number two, I did not see the Defendant present on this [part of the] film so therefore it's not material." (C.R. 214.)
The trial judge then made the following remarks:
 "And I might just as well tell you now, the preacher gave sermon by himself on abortion. He gave a sermon on we'll take your little children. We'll take them. If you don't want them we'll take them home with us. We'll look after them. I guess we is the organization he belongs to. Also, there was another sermon from somebody which I heard very distinctly about little children and killing little children. Then there was a long series of prayer, including the Lord's Prayer. I think it violates every rule I've made about this case." (C.R. 216.)
The trial court then refused to allow defense counsel to show this videotape to the jury. Appellant Coleman contends on appeal that the trial court's ruling was error.
While the general rule is that "[w]hen one party puts into evidence part of a conversation, document, or transaction, the opposing party is entitled to introduce the whole of it."Pyles v. State, 448 So.2d 416, 420 (Ala.Crim.App. 1983). However, this rule "is subject to an important qualification; i.e., those parts of the previously introduced conversation [, document, or transaction] relating to entirely separate and independent subjects, or to matters not relevant to the issues on trial, may not be brought out." R.C. Bottling Co. v.Sorrells, 290 Ala. 187, 189, 275 So.2d 131 (1973).
We do not find that the trial judge erred by refusing to allow defense counsel to show the deleted portions of the videotape. "It is likewise a matter for the trial court in the exercise of his sound discretion to determine whether the motion picture [videotape[11]] will aid the jury or tend to confuse or prejudice the jury." International Union, etc. v. Russell,264 Ala. 456, 470, 88 So.2d 175 (1956), aff'd, 356 U.S. 634,78 S.Ct. 932, 2 L.Ed.2d 1030 (1958). See also C. Gamble, McElroy'sAlabama Evidence, § 123.06 (3d ed. 1977). "If a motion picture contains both relevant and irrelevant sequences it should be carefully edited before it is shown to the jury so as to eliminate everything except the relevant scenes." C. Scott,Photographic Evidence, § 1298 (2d ed. 1969). One portion of the videotapes was deleted because the matters depicted were the subject of the motion in limine which was granted prior to trial. Nothing in the edited portions of the videotape which was introduced by the prosecutor violated the motion in limine and, thus, the door was not "opened" to allow defense counsel to put into evidence matters which the trial court had held were inadmissible prior to trial. The other portions of the videotapes which were deleted were parts in which appellant Coleman was not shown. Clearly, these portions were not relevant to the trial of this appellant and the trial judge correctly refused to allow them into evidence. "If the rule was otherwise, the court and the jury might be compelled to listen to a long recital of matters [or watch hours of a videotape], not at all connected with any matter or thing in controversy between the parties." 29 Am.Jur.2d Evidence § 268 (1967). We find no error here.
 IV
During his oral charge to the jury in Allison's trial, the trial court told the jury *Page 1388 
that a person who, regardless of his intent, enters or remains upon property which at the time is open to the public does so with license and privilege until he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person. (A.R. 387-89.)See Ala. Code, § 13A-7-1(4) (1975). Appellant Allison seems to argue that there was no personal communication of the revocation of license and that Henson and Lieutenant Trucks were not authorized to communicate the revocation. These arguments lack merit.
The evidence at trial showed that Henson and Captain Cochran gave numerous notices over the bullhorn to the crowd warning them that they were trespassing and requesting that they leave the premises. The warnings given to the group were sufficient notice. Clemons v. City of Birmingham, 277 Ala. 447, 449,171 So.2d 456 (1965). Furthermore, Lieutenant Trucks testified that he personally told each person before he arrested them that they were trespassing and gave them a chance to leave. Clearly, there was sufficient evidence that there was a personal communication to these two appellants that there was a revocation of license.
There is no doubt that Henson, as director of the clinic, was a person authorized to communicate the revocation. As stated by our Supreme Court,
 "To hold that the pastor of a church or a managerial officer of a corporation or other designated official with authority in excess of that of only an employee, does not have the power to warn off a trespasser, or to warn against trespassing, . . . without, as to the pastor, the express authorization of the governing board of the church, or, as to the president, general manager or general superintendent of a corporation, the express authorization of the stockholders or board of directors, is neither practical nor useful and we have found no prior case in Alabama which intimates that such is or should be the law. This statement does not apply to a situation where there is proof that the pastor or the manager did not have such authority.
 "A tramp or a vandal could trespass on corporate property, ready or threatening to inflict personal or property injury, and under such a holding, the officials in charge would be powerless to warn the trespasser to leave without some prior express authorization."
Johnson v. State, 277 Ala. 655, 658, 173 So.2d 824 (1964). Seealso Horn (abortion clinic staff was authorized to give notice of trespass); Cleveland (building security supervisor of abortion clinic was authorized to give notice as agent of owner or occupant). Lieutenant Trucks was also authorized to give notice. See Huff v. State, 16 Ala. App. 345, 77 So. 939 (1918) (police officer authorized to give warning where minister of church told him to act); Horn ("police officer may serve as an agent of an owner or occupant to give notice of a trespass").
 V
The following excerpts of the record are from the court's oral charge to the jury during Coleman's trial.
 "All right. Ladies and gentlemen, as you know the charge is criminal trespass. This is what the law says, this is what the City Code says, a person is guilty of criminal trespass if he knowingly enters or remains unlawfully in or upon premises. . . .
 "Now, what does it mean when it says knowingly? Knowingly means that you are aware of it. You had some knowledge, whether it be given to you by someone else or whatever, that you had some kind of knowledge. It means that a person was aware and acts knowingly with respect to the conduct or circumstances described in the statute, that's the trespass, when he is aware that his conduct is of the nature or that the circumstance exists, which basically says this, that if you are knowingly aware of — as I will lengthen the charge out a little more in detail, then that is one element that the City must convince you of beyond a reasonable doubt, that in this case that the Defendant knowingly entered *Page 1389 
or remained unlawfully on the premises. This is what the book says entered and remained means. A person enters or remains unlawfully in or upon premises when he is not licensed, invited, or privileged to do so. A person who, regardless of his intent, enters or remains in or upon the premises which are at the time open to the public, does so with a license and privilege unless he defies a lawful order not to remain or — not to enter or remain personally communicated to him by the owner of the premises or other authorized persons. That's what the code section says and that is the law.
". . . .
 "Now, as a practical matter, where there is a multitude of people, or a lot of people, obviously it's up to how a consent or request to terminate comes. That says there, what it says, it also says and the law says that consent is terminated when a person knows or has reason to know that the possessor of the property, and I have defined what a possessor is, shall remain on the premises [sic]. In other words, that the possessor is no longer willing to have that person remain on the premises when the person knows it or has a reason to know it." (C.R. 323-25.) (Emphasis added.)
Appellant Coleman contends that the court's use of the phrase "reason to know" was error because, she says, it lessened the prosecution's burden of proof with regard to the mens rea element ("knowingly") of this offense. In light of the facts of this case and the remainder of the court's oral charge, we find that the court's use of the phrase "reason to know" in this context was correct.
The evidence at trial showed that Henson and Captain Cochran told the crowd several times over the bullhorn that they were trespassing and that if they did not leave they would be arrested. Lieutenant Trucks also told each person this before he arrested them. It is obvious that the court used the phrase "reason to know" to explain the concept of withdrawal of consent because of Coleman's testimony. Coleman testified that she has a hearing impediment and that she could not hear what Henson or Cochran said over the bullhorn or what Trucks said to her personally because of the noise of the crowd and because she was "singing and praying." However, Coleman did not ask Trucks, a uniformed officer, what he was saying after he spoke to her. If a "reason to know" that withdrawal of consent to enter or remain is not sufficient, then, in situations such as the one at bar, each person could claim that they did not know that consent had been withdrawn because they could not hear (or listen) to the person withdrawing the consent because of their own actions. Furthermore, the court explicitly stated that the word "knowingly," as it relates to the mens rea element of the offense, requires that the person be aware of and act knowingly with respect to the conduct or circumstances described in the statute. The obvious interpretation of the court's oral charge is that a person is guilty of criminal trespass if he knowingly enters or remains unlawfully in or upon premises after he knows or has reason to know that consent for him to enter or remain has been withdrawn. There is no error here.
 VI
The appellants contend that the trial court erred by refusing to give their written requested charges on mistake of fact, the defense-of-third-persons defense, the defense of necessity, the definition of "knowingly," and the definition of justification. In light of the above discussion, we conclude that the trial judge correctly refused to instruct the jury on the above matters. Erlandson; Pursley.
For the reasons stated above, the appellants' convictions are affirmed.
AFFIRMED.
All the Judges concur.
[1] It should be noted that "[t]here are currently pending in the Circuit Court of Jefferson County in excess of five hundred cases that have been stayed pending this Court's decision" in this case. Appellant's brief, p. 2.
[2] References to the record of Coleman's trial will be cited as "C.R." and references to the record of Allison's trial will be cited as "A.R."
[3] Section 1-3-1, Code of Alabama 1975, provides that "[t]he common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature."
[4] Other courts have also referred to this law review discussion of the common law defense of necessity. See City of Ketteringv. Berry, 57 Ohio App.3d 66, 567 N.E.2d 316 (Ohio App. 1990);City of Akron v. Detwiler, No. 14385 (Ohio App. July 1990) (1990 WL 95683).
[5] "This view [that the harm must be unlawful if it emanates from a human source] has been challenged. See discussion in Comment,The Necessity Defense in Abortion Clinic Trespass Cases, 32 St. Louis U.L.J. 523, 527." State v. O'Brien, 784 S.W.2d 187, 192, n. 5 (Mo.App. 1989).
[6] The appellants have cited us to several lower court decisions which have accepted the necessity defense in this context. However, all of these cases, except a case by a Nebraska District Court (which was not appealed to a higher court), have been superseded by a higher court decision in their particular jurisdictions.
[7] The appellant seems to argue that the United States Supreme Court's decision in Webster v. Reproductive Health Services,492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), modified the Court's decision in Roe v. Wade. While the opinion inWebster "expanded the role of the states in regulating abortions, [it] expressly left Roe v. Wade (citation omitted) 'undisturbed.' " State v. O'Brien, 784 S.W.2d 187 at 190 (Mo.App. 1989).
[8] We are unwilling to say that the legislature has made a clear choice regarding abortion since this statute is essentially adopted from Title 14, § 9, Code of Alabama 1940 (Recompiled 1958). Merely because a law, which was found to be unconstitutional after it was passed by the legislature, has not been explicitly repealed by the legislature does not, in any way, mean that the legislature still approves of the unconstitutional law. For example, Art. IV, § 102, Constitution of Alabama of 1901, is entitled "Miscegenation laws" and it states that "[t]he legislature shall never pass any law to authorize or legalize any marriage between any white person and a negro, or descendant of a negro." This law was found to be unconstitutional, see United States v. Brittain, 319 F. Supp. 1058
(N.D.Ala. 1970), but it has never been repealed. Certainly, it would be ludicrous to say that the legislature has made a "clear choice" concerning miscegenation because this unconstitutional statute has never been rescinded. Furthermore, the State Board of Health has promulgated regulations (as authorized by the legislature, see § 22-2-2(6), Code of Alabama 1975) regulating abortion clinics and abortion procedures in this state. We note that the legislature has also enacted statutes concerning parental consent to performing an abortion upon a minor. See Ala. Code, § 26-21-1 through § 26-21-8
(1975).
[9] Likewise, the proclamation by Governor Guy Hunt opposing abortion which is cited by the appellants, is not superior to the Supreme Court or the Constitution of the United States. SeeState v. O'Brien, 784 S.W.2d 187, 192 (Mo.App. 1989) (presidential proclamation opposing abortion would not alter the law as declared by the United States Supreme Court).
[10] In Cleveland v. Municipality of Anchorage, 631 P.2d 1073
(Alaska 1981), the Alaska Supreme Court addressed this same contention but in a context similar to that set out in §13A-2-6(b), which states that "[a] person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless his mistaken belief is founded upon an official statement of the law contained in a statute or the latest judicial decision of the highest state or federal court which has decided on the matter." In that case, the appellants argued that their acts of trespass upon an abortion clinic should be excused "on the ground that they honestly and reasonably believed that the defense justified their presence at the Clinic," Cleveland, 631 P.2d at 1083, and the appellants cited two lower court judicial decisions from another state with identical facts in which the defendants had been acquitted on the grounds of necessity. The Alaska Supreme Court held that an individual was justified only in relying on statutory, administrative, or case law of either the United States or the state in which the illegal actions were committed and, thus, that the appellants could not claim mistake of law.
[11] "Duly verified sound or silent videotapes of relevant subjects are admissible in evidence in both civil and criminal cases on the same basis as motion picture films and subject to the same rules applicable to photographic evidence." C. Scott,Photographic Evidence, § 1294 (2d ed. 1969) (1987 Supp.). *Page 1390