The appellant, Scott Ralph Kauffman, was convicted for the unlawful possession of marijuana in the first degree and was sentenced to ten years' imprisonment. On this appeal, the appellant contends that the trial court erred in refusing to consider the defense of medical necessity.
The appellant contends that he is a paraplegic suffering from "uncontrollable muscle spasms and associated crippling symptoms of an affliction that is progressing from paraplegia to quadriplegia." Appellant's brief at 9. He argues that had the *Page 91 
trial court recognized the defense of medical necessity, he would have produced evidence that he "is in intense pain, that the medication that he has available to him (Tylox and Valium) are addicting, reach points of toxicity, and plateaus of effectiveness. When the appellant's medication reaches plateaus of effectiveness, the marijuana is the only medication that will relieve his pain and suffering." Appellant's brief at 3.
Although the distinction between duress and necessity is often "blur[red]," 2 W. LaFave A. Scott, Substantive CriminalLaw § 5.4(a) (1986), the legal defense of duress is recognized in Ala. Code 1975, § 13A-3-30(a),[1] which states:
 "It is a defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by the threat of imminent death or serious physical injury to himself or another."
The official commentary to this section states:
 "This section essentially states Alabama case law. The standard from those cases is that compulsion sufficient to excuse criminal conduct has to be 'present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done.' Haywood v. State, 43 Ala. App. 358, 190 So.2d 725 (1966); Browning v. State, 31 Ala. App. 137, 13 So.2d 54 (1943); Moore v. State, 23 Ala. App. 432, 127 So. 796 (1930)."
The defense of medical necessity argued by the appellant is not embraced within the definition of "duress" found in the Alabama Criminal Code. Therefore, "our recognition of the necessity defense must be derived from the common law."Allison v. City of Birmingham, 580 So.2d 1377, 1380
(Ala.Cr.App.), cert. denied, 580 So.2d 1390 (Ala. 1991). "The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature." Ala. Code 1975, § 1-3-1. The courts of this state "are compelled to follow the common law on any subject when the same has not been changed by the legislative branch of our government."Smith v. United Construction Workers, District 50, 271 Ala. 42,43, 122 So.2d 153, 154 (1960), overruled on other grounds,Swartz v. United States Steel Corp., 293 Ala. 439,304 So.2d 881 (1974).
In Allison, this Court held that "necessity is not a valid defense to a charge of criminal trespass involving abortion clinics." Allison, 580 So.2d at 1382.
 " 'Necessity is a type of justification defense. Conduct which otherwise would lead to civil or criminal liability is justified because it is socially acceptable and desirable under the circumstances. When a situation forces an individual to choose between obeying the law or breaking it to avoid a greater harm, society prefers that the individual choose the lesser evil. The defense is based on determining that the act, though technically violative of the law, is legal because the factual situation negates the validity of the normal rules of liability. The penal laws are designed to meet only the ordinary exigencies of life. When rare and extraordinary circumstances arise, necessity justifies conduct "which promotes some value higher than the value of literal compliance with the law." The defense applies only when the actor makes a voluntary choice not to comply with the law, and focuses on the desirability, not the possibility, of compliance.
 " 'Although recognized long ago in the common law, the defense of necessity is poorly developed in Anglo-American jurisprudence. *Page 92 
Fearing its abuse, few courts were willing to accept the defense; those courts that did accept it failed adequately to express their rationales in terms of the relevant principles. The defense is most often confused with duress, an excuse defense. Excuse, which includes mistake and insanity as well as duress, focuses on the individual and his capacity to commit the act. If excusing conditions are found, only this particular defendant is excused, although his action is not termed legal. In contrast, if an action is justified by necessity, then a new rule of law is created which instructs all future actors faced with the same conflict of values how to act.' "
Allison, 580 So.2d at 1380.
The issue presented here is the subject of the annotation found at 1 A.L.R.5th 938 (1992).
 "The defense of 'necessity,' at least with respect to state narcotics prosecutions, can be divided into those of a 'medical' or 'nonmedical' nature.
 "While at least two courts have found sufficient evidence of medical necessity to justify a remand for a full determination of the defense [see State v. Hastings, 118 Idaho 854, 801 P.2d 563, 1 A.L.R.5th 1207 (1990); State v. Diana, 24 Wn. App. 908, 604 P.2d 1312 (1979)] most courts have held to the contrary, generally due to a lack of medical testimony on the issue of medical necessity, a reluctance to invade legislative domain, or the defendant's failure to demonstrate the absence of an available alternative, [see Spillers v. State, 145 Ga. App. 809, 245 S.E.2d 54
(1978); State v. Bachman, 61 Haw. 71, 595 P.2d 287
(1979); State v. Tate, 102 N.J. 64, 505 A.2d 941
(1986); State v. Piland, 58 N.C. App. 95, 293 S.E.2d 278, appeal dismissed, 306 N.C. 562, 294 S.E.2d 374 (1982).]"
1 A.L.R.5th at 946-47. See also G. Bilz, The Medical Use ofMarijuana: The Politics of Medicine, 13 Hamline J. of Pub.L. 
Pol. 117 (1992).
It is the opinion of this Court that the Alabama Legislature has precluded the appellant's use of the defense of medical necessity, and that the trial court properly excluded, as a matter of law, the defense of medical necessity.
In 1979, the Alabama Legislature passed the "Controlled Substances Therapeutic Research Act." 1979 Ala. Acts 870, No. 79-472 (codified at Ala. Code 1975, § 20-2-110 through20-2-120). Section 20-2-111 states:
 "The legislature finds that recent research has shown that the use of cannabis may alleviate nausea and ill-effects of cancer chemotherapy, and may alleviate the ill-effects of glaucoma. The legislature further finds that there is a need for further research and experimentation with regard to the use of cannabis under strictly controlled circumstances. It is for these purposes that the Controlled Substances Therapeutic Research Act is hereby established."
This Act authorizes certain specially certified physicians to dispense cannabis under certain circumstances to cancer patients receiving chemotherapy treatments and to glaucoma patients, and to those patients only. Section 20-2-120 provides that "[a]ny person or any practitioner who prescribes or dispenses cannabis or any of its derivatives for reasons other than outlined in this article upon conviction thereof shall be guilty of a felony and shall be punished as provided in section13A-12-211 [unlawful distribution of controlled substances]." "The stated purposes of the Therapeutic Research Act reveal that marijuana lacks accepted safety and has no accepted medical use. . . . While marijuana may be useful in the treatment of some medical conditions it has not achievedaccepted medical use or safety in its prescription and application." Isbell v. State, 428 So.2d 215, 216-17
(Ala.Cr.App. 1983).
This issue was addressed in State v. Hanson, 468 N.W.2d 77,78-79 (Minn.App. 1991):
 "Minnesota courts have acknowledged and applied the common law defense of necessity. . . . [The appellant], citing decisions from other jurisdictions, argues that the trial court erred in excluding medical necessity as a defense to a marijuana *Page 93 
charge. See, e.g., State v. Diana, 24 Wn. App. 908, 915-16, 604 P.2d 1312, 1317 (1979). We disagree.
 "Minnesota appellate courts have not previously been presented with a defense of medical necessity, nor has our legislature codified a necessity defense. However, a prime feature of this defense as developed elsewhere is a deference to the legislative prerogative to define the criminal offense.
 "The defense of necessity is available only in situations wherein the legislature has not itself, in its criminal statute, made a determination of values. If it has done so, its decision governs.
 1 LaFave Scott, Substantive Criminal Law § 5.4, 631 (1986) (footnotes omitted); see also 10 Unif. Laws Annot. Model Penal Code § 3.02(c) ('a
 legislative purpose to exclude the justification claimed does not otherwise plainly appear').
 "The Minnesota legislature has attached criminal penalties to the possession, sale or cultivation of marijuana. . . . The statutory classification of marijuana as a Schedule I substance implies a determination that marijuana has 'no currently accepted medical use in the United States.' Minn.Stat. § 152.02, subd. 7(1) (1990). The legislature has enacted a single exception, in the THC Therapeutic Research Act (TRA), exempting from criminal sanctions possession or use of marijuana for cancer patients undergoing chemotherapy who are receiving the drug under the strict controls of an approved medical research program. Minn.Stat. § 152.21, subds. 1, 3, 6 (1990). These statutory provisions demonstrate that the legislature has specifically addressed and determined the possible medical uses of marijuana.
". . . .
 ". . . [T]he enactment of the TRA [Therapeutic Research Act], along with the implications of the Schedule I classification of marijuana, show conclusively that the possible medical uses of marijuana have been brought to the legislature's attention. In this regard, [the appellant] has not shown that the anti-seizure potential of marijuana is so unique, or affects such a small number of people, as to be inappropriate for legislative action."
See also State v. Tate, 102 N.J. 64, 505 A.2d 941 (1986), where the Supreme Court of New Jersey rejected the quadriplegic defendant's contention that "his use of marijuana is a 'medical necessity' because it is the only treatment that can ease the pain of severe, recurring spastic contractions."102 N.J. at 75-76, 505 A.2d at 947 (Handler, J., dissenting).
The trial court properly refused to consider the appellant's contention of "medical necessity" as a valid defense in a prosecution for the unlawful possession of marijuana.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Present § 13A-3-30 was adopted by the Legislature in 1979 Ala. Acts 1163, No. 79-664, § 1. This Act specifically amended the "expanded" defense of duress defined in 1977 Ala. Acts 812, Acts 1977, No. 607, § 645, which provided: "It is a defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by the threat or use of unlawful force against his person or the person of another, which threat or use of unlawful force a person of reasonable firmness in the actor's situation would not have resisted."